John Elliott GRUZEN *v.* STATE of Arkansas

CR 81-84                                              634 S.W.2d 92

Supreme Court of Arkansas
Opinion delivered May 24, 1982
[Rehearing denied June 28, 1982.]

*Lessenberry & Carpenter,* by: *Thomas M. Carpenter;* and *Frank G. Shaw,* for appellant.

*Steve Clark,* Atty. Gen., by: *Matthew Wood Fleming,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Appellant, John Elliott Gruzen, was convicted of capital felony murder in connection with the kidnapping and death of 12-year-old Dana Mize of Vilonia, Arkansas. Appellant's original conviction on this charge was reversed in *Gruzen v. State,* 267 Ark. 380, 591 S.W.2d 342 (1979). On retrial, after the State waived the death penalty, appellant was given the same sentence, life imprisonment without parole. On appeal, we affirm.

The evidence at trial established that appellant, who lived in New Jersey, flew to Little Rock on April 8, 1976. That same day he rented a silver Chevelle, license number CWB 507, from Hertz Rent A Car. He then checked into the Alamo Plaza Motel in Little Rock, where he stayed several days. During this time he obtained a gun from the Square Deal Pawn Shop in North Little Rock.

On April 12 he drove to Conway and checked into the Kings Inn. The next day, as he was checking out, he asked the motel clerk where Vilonia was. The clerk gave him directions. This occurred between 3:30 and 4:00 p.m. Between 5:00 and 5:30 p.m., Randy Shannon, who lived on the Vilonia highway, saw appellant in a gray Chevrolet in front of his house, talking to the victim. She was standing beside the car. Shannon thought she was giving him directions because he noticed her pointing toward her house.

Ravel Lloyd, another Vilonia resident, testified that she also saw a man driving a gray car talking to the victim close to the Shannon residence at approximately the same time. She then saw the man open the car door, pull the victim into the car, and take off at a high speed. About 7:00 p.m. that evening the victim's family realized she was missing and began an unsuccessful search for her.

At about 2:00 p.m. on April 14 Gruzen bought a ticket for Newark, New Jersey from an Oklahoma City Amtrak ticket agent. He then turned in the rented car at the airport and returned to the train station barely in time to catch a 6:10 p.m. train.

At about 10:00 a.m. on April 16 the victim's body was discovered in a small pond outside of Vilonia. The body was

taken out of the pond around 2:00 p.m. and an autopsy was performed that afternoon at 4:30 p.m. Pathologists testified that drowning was the cause of death, although the body was bruised and scratched. They both testified that it was impossible to pinpoint the exact time of death. One estimated that she had been dead 24 hours, plus or minus eight to ten hours, and the other estimated that she had been dead 36 hours, a little more or a little less.

Various items were confiscated in a search of appellant's home in New Jersey including receipts from the trip to Arkansas, the gun which had been bought in North Little Rock and three rolls of film. The film was developed and one of the pictures was of a "Toad Suck Ferry" sign, a sign located about a mile and a half from the pond where the victim was found.

Appellant's rented car was swept and vacuumed by a criminal investigator, who found several hairs. An FBI special agent compared these hairs to a hair taken from the victim and testified that the hairs matched in all 15 of the characteristics used in comparing hair.

After viewing this evidence in the light most favorable to the State, we conclude that there was substantial evidence to support the jury's finding of guilt.

I

Appellant first argues that the charge of capital felony murder should have been reduced to murder in the first degree because in the first trial the jury determined that no aggravating circumstances existed. This issue was considered and rejected in *Wilson* v. *State,* 271 Ark. 682, 611 S.W.2d 739 (1981). There, we stated:

> Aggravating circumstances are not an element of capital murder as defined in Ark. Stat. Ann. § 41-1501, and the presence of aggravating circumstances is not necessary to support a conviction under that section.

We see no reason to depart from this ruling. Aggravating circumstances are not even to be considered where, as here,

the State has waived the death penalty. Ark. Stat. Ann. § 41-1301 (3) (Repl. 1977).

## II

By pretrial motion, which was denied, appellant asked that he be granted a bifurcated trial on the issue of guilt as to commission of the acts alleged and the issue of guilt by reason of mental disease or defect (insanity). Appellant wanted a jury determination of guilt of commission, first, and then, if he was found guilty, wanted the jury to determine his guilt based on his affirmative defense of mental disease or defect pursuant to Ark. Stat. Ann. § 41-601 (1) (Repl. 1977), which provides:

> (1) It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.

Appellant argues that raising the defense of insanity forces him to admit his guilt of commission of the acts alleged and, thereby, violates the privilege against self-incrimination.

The State is not relieved of the burden of proving beyond a reasonable doubt each element of the offense charged merely because a defendant has raised the affirmative defense of mental disease or defect under Ark. Stat. Ann. § 41-601 (1). To this extent this statute does not presuppose an admission of the act in question. *See Westbrook* v. *State,* 265 Ark. 736, 580 S.W.2d 702 (1979); *Andrews* v. *State,* 265 Ark. 390, 578 S.W.2d 585 (1979). For this reason appellant's privilege against self-incrimination has not been violated.

Appellant is not entitled to a bifurcated trial on the issues of guilt as to commission and guilt by reason of insanity because our Rules of Criminal Procedure do not provide for such a trial. Absent a constitutional infirmity in

our procedure, appellant is not entitled to have these issues determined separately.

In any event, appellant is unable to show prejudice from the ruling of the trial court on this issue because appellant never raised the affirmative defense of mental disease or defect as permitted by statute. Appellant waived the adverse ruling on his motion for a bifurcated trial by failing to raise this defense.

### III

Appellant argues that the trial court erred in allowing a State policeman to give his opinion as a lay person as to when the victim died. The policeman testified that he had been in criminal investigation work for eleven and a half years and had observed bodies that had been in the water for short periods of time as well as for a few days. He was then asked his opinion, based on his observation and experience, as to whether this victim's body had been in the water "a few days, a short time or a long time." Before he was allowed to answer, defense counsel was permitted to show, through a *voir dire* of the witness, that he had almost no scientific knowledge about determining time of death. The court then instructed the jury:

> THE COURT: Ladies and gentlemen of the jury, let me admonish you that you have heard the qualifications of the witness; you've heard the testimony of his experience and the fact that he was there on the scene. I'm going to allow him to express his opinion, and it is for you to determine what that opinion might be worth.

The witness then stated that in his opinion the victim had been in the pond several days.

Rule 701, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979) provides:

> Rule 701.   Opinion testimony by lay witnesses. —If the witness is not testifying as an expert, his

testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Here, the witness's opinion was rationally based on his perception of the victim's body when it was removed from the water and on his past experience with drowned persons as a police investigator. In light of the fact that the judge gave the jury a cautionary instruction and the fact that both pathologists testified that determining time of death is not an exact science, we cannot say the judge erred in allowing this opinion.

## IV

Appellant argues that the trial court erred in permitting the testimony of Ravel Lloyd, which was given at appellant's first trial, to be read into evidence at the second trial. At a hearing on this issue Lloyd's physician testified that Lloyd suffered from hallucinations and schizophrenia and was not capable of testifying. The trial judge then ruled that her previous testimony could be read into evidence under Rule 804, Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), which provides:

Rule 804. Hearsay exceptions — Declarant unavailable. — (a) Definition of Unavailability. 'Unavailability as a witness' includes situations in which the declarant:

. . . .

(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

. . . .

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a *witness at another hearing of the same or a different* proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.  . . .

Appellant questions the finding that Lloyd was unavailable as a witness because of mental infirmity, arguing that only a psychologist or psychiatrist should be allowed to give such testimony. We disagree.

A licensed physician who has known and treated a patient for ten years, as here, can testify as to whether that person is mentally competent to be a witness. The doctor in this case, who had been practicing for 22 years, testified that Lloyd had become mentally unstable in the last year. It was not error for the trial court to find that Lloyd was unavailable as a witness without a psychiatrist's opinion.

Appellant further argues that the testimony should not have been admitted because appellant was mentally incapable of assisting his attorney during the first trial when the testimony was given. Appellant concludes that the use of the testimony at the second trial violated the confrontation clause of the Sixth Amendment and denied him the opportunity to develop the cross-examination of the witness as required in Rule 804 (b) (1), *supra.* However, appellant has not demonstrated how a cross-examination with appellant's assistance would differ from a cross-examination conducted without appellant's assistance. The party alleging error is required to demonstrate that prejudice did in fact exist. *Finch* v. *State,* 262 Ark. 313, 556 S.W.2d 434 (1977).

## V

Appellant argues that the trial court erred in not allowing him to read to the jury the statement of a key witness for the State, Randy Shannon. The prosecuting attorney had been ordered to furnish appellant the witness's statement pursuant to Ark. Stat. Ann. § 43-2011.3 (b) (Repl. 1977):

. . . .

(b)   After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the state to produce any statement (as hereinafter defined) of the witness in the possession of the state which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

After direct examination appellant obtained all of the witness's statements except one, which was not in the file. The next day appellant reviewed the State's file and found the missing statement. Appellant did not make an objection at that time; instead, he waited until the next day after both parties had rested to apprise the trial judge that the statute had been violated.

Ark. Stat. Ann. § 43-2011.3 (d) sets out the remedies for a violation of § 43-2011.3 (b):

. . . .

(d)   If the state elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion

shall determine that the interests of justice require that a mistrial be declared.

Appellant did not ask that the testimony be stricken or that a mistrial be declared; instead, he made a motion that the statement be read to the jury.

We held in *Wicks* v. *State,* 270 Ark. 781, 606 S.W.2d 366 (1980) that an issue must be presented to the trial court in a timely and appropriate manner. Here, both sides had rested, and appellant had known of the error for a day before he informed the trial judge and requested corrective action. Under these circumstances we cannot say that the trial judge erred in not allowing the statement to be read to the jury.

## VI

Appellant argues that the trial court should have declared a mistrial because of certain statements made by the prosecutor during closing arguments. One such statement was that Gruzen chose to drive to Oklahoma City and take a train back to New Jersey rather than fly because he could not take a gun through an airport security system. We have held that a prosecutor is free to argue any inference reasonably and legitimately deducible from the evidence. *McCroskey* v. *State,* 271 Ark. 207, 608 S.W.2d 7 (1980). Here, there was evidence indicating that Gruzen flew to Little Rock and bought a gun; this same gun was found at his home in New Jersey. The prosecutor's statement concerning why appellant chose to ride a train home is a reasonable inference deducible from this evidence and thereby permissible.

Appellant also objects to the prosecutor's statement that he and his deputy prosecutor were new to the case and only had a short time to work on it as opposed to the five years defense had had. Although this statement was improper, the judge removed any possible prejudice by immediately admonishing the jury that what is said in closing arguments is not evidence.

The third statement that appellant objects to is the prosecutor telling the jury that the whole matter began as a

result of a captain of a New Jersey county law office receiving a "confidential memorandum" which caused him to call North Little Rock to see if a little girl had been killed. At trial the captain was asked how he became involved. A bench conference followed. Counsel for both sides then agreed that the captain would not relate anything about any conversations; he would just tell that he got some information. The captain then testified that he "received some information from [another] captain of detectives [in his office] . . . inquiring about a young female that was killed someplace down in Arkansas." There can be no doubt that the jury knew from this testimony that the investigation began in New Jersey as a result of information the captain had received. The fact that the prosecutor argued to the jury that the captain received a "confidential memorandum" rather than merely "some information" is not error under the circumstances.

Appellant also argues reversible error was committed when the prosecutor questioned why the defense "had to go all the way to Fayetteville to find a pathologist to testify when 90 percent . . . are in Little Rock where he lives" and then told the jury that " . . . if you look hard enough . . . you can find someone to agree with you." While we do not condone these remarks, we cannot say that they constituted reversible error, particularly since the judge gave a cautionary instruction to the jury. The trial judge has a broad latitude for discretion in controlling the arguments of counsel and will not be reversed unless there is manifest gross abuse of that discretion. *Parker* v. *State*, 265 Ark. 315, 578 S.W.2d 206 (1979). We cannot find abuse of discretion in the trial court's ruling on this issue.

We have also examined the record for all other legal errors, as is our practice in cases of like punishment, and finding none prejudicial, affirm the conviction and punishment.

Affirmed.