Johnny Paul DODSON *v.* STATE of Arkansas

CR 99-1088                                                   14 S.W.3d 489

Supreme Court of Arkansas
Opinion delivered April 13, 2000

*L. T. Simes II*, Judge;

*James N. Miller*, and *W. Frank Morledge, P.A.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. This is the second appeal in this criminal case.[1] The appellant, Johnny Paul Dodson, appeals his second conviction for the offenses of possession of a controlled substance (methamphetamine) with intent to deliver and possession of a controlled substance (marijuana). He asserts five points of error. We find no error and affirm.

▮▮ Mr. Dodson was arrested during a traffic stop in Brinkley, Arkansas, while driving a car that was owned by Gwen McCullum. Mr. Dodson was accompanied by two other passengers: James

---

[1] *Dodson v. State*, 326 Ark. 637, 934 S.W.2d 198 (1996) (*Dodson I*).

Martin and Ricky Bennett. Officer Ed Randle of the Brinkley Police Department had stopped the vehicle driven by Mr. Dodson after he observed the vehicle make a right turn at a high rate of speed without a turn signal, and after he noticed something being thrown out of the passenger window, which later turned out to be a cigarette butt. The officer approached the driver's side of the vehicle and asked to see Mr. Dodson's driver's license. Mr. Dodson responded that he did not have a driver's license. Shortly thereafter, Officer Randle ordered Mr. Dodson and his passengers out of the car.[2] Mr. Dodson was then taken into custody and placed in the officer's patrol unit.

When the vehicle no longer had any occupants, Officer Randle could see a brown leather satchel sticking out from under the right side of the passenger's seat, where Mr. Bennett had been sitting. During a search of the vehicle, Officer Randle opened this leather satchel and found green vegetable matter that field-tested positive for marijuana and "a granule type matter, kind of off-white brownish" that field-tested positive for methamphetamine. The methamphetamine had been packaged in several smaller packets and then placed inside the leather satchel. Upon finding the contraband, Officer Randle glanced toward his patrol unit and saw some wild movement. He returned to his unit, removed Mr. Dodson from the vehicle, and noticed a large bulge in the crotch area of Mr. Dodson's pants. In order to be sure the bulge was not a weapon, Officer Randle reached inside Mr. Dodson's pants and found $6,000.00 cash.

Mr. Dodson was charged by information with three felony offenses, namely possession of methamphetamine with intent to deliver the substance, Class Y felony; possession of marijuana, Class C felony, and being a felon in possession of a firearm, Class D felony. He was also charged with two traffic violations. Mr. Dodson was tried before a jury and convicted on all counts with the exception of the firearm charge. Judgment was entered by the trial court, sentencing him to a term of imprisonment for fifty years. We

---

[2] Officer Randle testified at the suppression hearing that Mr. Dodson reached toward a gun that another officer had seen in the back seat of the vehicle. This action by Mr. Dodson prompted Officer Randle to draw his weapon and order Mr. Dodson and his passengers out of the vehicle. Officer Randle then proceeded to search the vehicle in order to make sure that there were no other weapons or contraband items in the vehicle.

affirmed that judgment in *Dodson I,* but stated that "nothing in this opinion should be construed as prohibiting Appellant from filing a proper petition for postconviction relief pursuant to A. R. Cr. P. 37." *Dodson I,* 326 Ark. at 644, 934 S.W.2d at 202.

On February 3, 1997, Mr. Dodson filed a petition for post-conviction relief pursuant to Ark. R. Crim. P. 37 in the Circuit Court of Monroe County and alleged ineffective assistance of counsel. The trial court entered an order on June 16, 1997, which granted the Rule 37 petition and granted Mr. Dodson a new trial. Prior to his second trial, Mr. Dodson filed a motion in limine seeking to suppress all items seized during the search of the car. That motion was denied by the trial court after it held a suppression hearing on February 8, 1999. Mr. Dodson's second jury trial began on February 10, 1999, and culminated in his second conviction on the felony offenses of possession of methamphetamine with intent to deliver and possession of marijuana, and the misdemeanor traffic offenses. He was sentenced to twenty-five years in the Arkansas Department of Correction on the felony offense of possession of methamphetamine with intent to deliver, and he received fines totaling $5,300 on the other felony and misdemeanor offenses. On appeal, Mr. Dodson raises five points of error.

## 1. Sufficiency of the Evidence

Mr. Dodson contends that his motion for a directed verdict of acquittal on the drug possession charges should have been granted. Although this argument is Mr. Dodson's fifth point on appeal, the preservation of an appellant's right to freedom from double jeopardy requires that we review the sufficiency of the evidence before addressing other alleged trial error. *King v. State,* 338 Ark. 591, 999 S.W.2d 183 (1999); *Lee v. State,* 326 Ark. 229, 931 S.W.2d 433 (1996). Specifically, Mr. Dodson contends that "if the testimony of Ricky Bennett is disregarded, as argued in [Mr. Dodson's second point on appeal], the proof at trial was insufficient to establish [Mr. Dodson's] constructive possession of the drugs." However, in determining the sufficiency of the evidence, we review all of the evidence that was introduced at trial, and we disregard any alleged trial errors. *Lee v. State, supra; Eichelberger v. State,* 323 Ark. 551, 916 S.W.2d 109 (1996). Consequently, the testimony of Ricky Bennett cannot be excluded from our review of the sufficiency of the

evidence. By making his argument contingent on the exclusion of Mr. Bennett's testimony, Mr. Dodson apparently concedes that there was substantial evidence to support the drug convictions when Mr. Bennett's testimony is considered.

██ We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Id.*

██ It is not necessary for the State to prove literal physical possession of drugs in order to prove possession. *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994). Possession of drugs can be proved by constructive possession. *Id.* Although constructive possession can be implied when the drugs are in the joint control of the accused and another, joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. *Id.* There must be some other factor linking the accused to the drugs:

> Other factors to be considered in cases involving automobiles occupied by more than one person are: (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the automobile, or exercises dominion or control over it; and (5) whether the accused acted suspiciously before or during the arrest.

*Id.* at 207, 884 S.W.2d at 600.

██ In this case, there was joint occupancy of the automobile, but Mr. Dodson exercised dominion or control over the vehicle, in that he was the driver. Furthermore, although the contraband was not found on the same side of the vehicle where Mr. Dodson was sitting, it was found in close proximity to Mr. Dodson. Moreover, Mr. Dodson acted suspiciously during his arrest, as evidenced by Officer Randle's testimony that Mr. Dodson was making wild

movements while seated in the patrol unit. Additionally, Officer Randle found approximately $6,000 in cash hidden on Mr. Dodson's person. All of these factors link Mr. Dodson to the drugs that were found in the car. Finally, when we consider the testimony of Ricky Bennett in the light most favorable to the State, there was substantial evidence of Mr. Dodson's possession of the drugs. According to Mr. Bennett's testimony, he had previously testified at his own trial that his uncle, Mr. Dodson, handed him the drugs that were found under the seat. Based on this record, we cannot say that the trial court erred when it denied Mr. Dodson's motion for a directed verdict.

## 2. Authentication of Evidence

Mr. Dodson argues that the admission into evidence of (1) a small Ziplock bag containing several smaller bags of off-white particles, and (2) a report by the Arkansas State Crime Laboratory identifying the contents of the Ziplock bag as methamphetamine, was an abuse of discretion by the trial court. In support of this argument, he asserts that the State failed to properly authenticate the substance in the Ziplock bag because of varying descriptions of the substance by State's witnesses. In response, the State suggests that Mr. Dodson's argument is barred because his abstract only indicates that he made a general objection to the challenged exhibits when they were offered into evidence. We agree.

The record on appeal is confined to that which is abstracted. *Martin v. State*, 337 Ark. 451, 989 S.W.2d 908 (1999). It is the appellant's burden to provide both a record and an abstract sufficient for appellate review. *Porter v. Porter*, 329 Ark. 42, 945 S.W.2d 376 (1997). We will not entertain an argument when it cannot be determined from the abstract what arguments were made to the lower court. *Id.* Here, Mr. Dodson's abstract merely states that the challenged exhibits "were admitted into evidence over the objection of the defendant." From such general language, we cannot determine what arguments were made to the lower court. Furthermore, this court has made clear that a specific objection is necessary in order to preserve an issue on appeal. *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998).

We note that Mr. Dodson's abstract indicates that his motion for a directed verdict was partially based on "the discrepancy of descriptions of the controlled substance[.]" We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999). Thus, Mr. Dodson was not challenging the admissibility of particular evidence when he sought, by a directed-verdict motion, to have the charges dismissed because of the State's purported failure to authenticate the challenged exhibits. According to Mr. Dodson's abstract, this appeal is the first time he argues that the challenged exhibits were inadmissible because of the State's alleged failure to authenticate them. We will not address arguments raised for the first time on appeal. *Tucker v. State*, 336 Ark. 244, 983 S.W.2d 956 (1999). Even if Mr. Dodson's directed-verdict motion were interpreted as an authentication objection to the admissibility of the challenged exhibits, his argument would be barred because, according to his abstract, the authentication objection was not made when the State offered those exhibits into evidence. *Pryor v. State*, 314 Ark. 212, 861 S.W.2d 544 (1993); *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992).

We therefore conclude that Mr. Dodson is procedurally barred on the authentication issue. Accordingly, we must affirm on that issue.

### 3. Fifth Amendment Privilege

Mr. Dodson next argues that the trial court erred when it allowed the State to call Mr. Dodson's nephew, Ricky Bennett, as a witness. Specifically, he contends that the trial court should have allowed Mr. Bennett to invoke his Fifth Amendment privilege against self-incrimination. Alternatively, Mr. Dodson asserts that the trial court erred when it refused to grant a mistrial during Mr. Bennett's testimony.

Mr. Bennett was a passenger in the car that Mr. Dodson was driving when he was arrested. Mr. Bennett was also arrested and charged with possession of drugs. He was, however, tried separately and acquitted of possession of the drugs found in the satchel under the passenger seat, but convicted of possession of drugs found on his

person. Mr. Bennett's trial occurred after Mr. Dodson's first trial and before the second trial.

The State called Mr. Bennett as a witness at Mr. Dodson's second trial. Upon taking the stand, Mr. Bennett immediately asserted his Fifth Amendment right not to incriminate himself. After the trial court allowed the State to begin its direct examination of Mr. Bennett, he answered several questions about events leading up to the traffic stop. However, when the State asked whether anything transpired between the witness and Mr. Dodson just before the vehicle was stopped by the police officer, Mr. Bennett once again asserted his Fifth Amendment privilege against self-incrimination. At that point, Mr. Dodson objected to the trial court ordering Mr. Bennett to answer the State's question. Mr. Dodson also moved for a mistrial on grounds that the State improperly called Mr. Bennett as a witness knowing that the witness would invoke his Fifth Amendment privilege. The State responded that Mr. Bennett did not have the right to invoke the Fifth Amendment because he had already been acquitted of possession of the drugs found in the satchel. Thus, according to the State, he was not in jeopardy and could not incriminate himself on that drug charge. Mr. Dodson countered that Mr. Bennett had given conflicting testimony at his own trial and at Mr. Dodson's first trial, such that he could be charged with perjury if he were forced to affirm either of his prior statements. The trial court overruled Mr. Dodson's objection and denied his motion for mistrial.

The State proceeded with its direct examination of Mr. Bennett. Although the trial court instructed the witness to answer the State's questions, he persistently refused to respond to the State's questions regarding his prior testimony, and, at one point, began once again to assert the Fifth Amendment in response to the State's questions. The trial court then removed the jury from the courtroom and allowed questioning to continue outside of the jury's presence. The trial court also advised Mr. Bennett that he would be held in contempt of court if he persisted in asserting the Fifth Amendment. Mr. Bennett stopped invoking the Fifth Amendment at that point, but continued to be unresponsive. The State's questioning continued until Mr. Bennett finally testified that someone had handed him the package and he put it under the seat that night. He could not, however, say whether his uncle, Mr. Dodson, was the person who handed him the package. While he admitted to

testifying at his own trial that Mr. Dodson gave him the package, Mr. Bennett now testified that he could not recall who gave him the package.

The State's questioning of Mr. Bennett resumed thereafter in the presence of the jury:

> Q. Mr. Bennett, on the night of September the 11th, 1995, where did you get the drugs that were found beneath your seat on the passenger side of that vehicle?
>
> A. In my testimony in my trial, I stated that those drugs were handed to me by my uncle.
>
> Q. Is that the truth as you recall it?
>
> A. That is my testimony at my trial that happened at my trial.
>
> Q. Is that the truth as you recall it, sir?
>
> A. That was my testimony.

The State then tendered the witness, and Mr. Dodson's attorney proceeded to conduct a thorough and extensive cross-examination of Mr. Bennett. During that cross-examination, Mr. Bennett admitted that he had given conflicting testimony regarding the drugs in the leather satchel:

> Q. ... [I]n October of 1995, two months after this occurred, you gave sworn testimony that you knew nothing about any drugs, didn't you?
>
> A. Yes, sir.
>
> Q. That no one ever conversated about any drugs, no one ever said anything about any drugs, you didn't know how they got into the car. I'm sorry?
>
> A. Yes, sir.
>
> Q. But then in your trial in June, you said that someone threw the drugs and hit you in the chest, is that right?
>
> A. Yes, sir.

\* \* \*

Q. Is there anyway to know if you're telling the truth if (*sic*) the first time you gave sworn testimony or the second time? I'm sorry? Your testimony was directly opposed, wasn't it? One was "I don't know where the drugs came from." The other one was "They were someone else's drugs," isn't that right?

A. (*Inaudible response.*)

Q. Answer out loud please.

A. Yes.

Q. Now, you don't want to say they were your drugs, do you? If they were your drugs, you could be looking — you could have been looking at 10 to 40 or life, couldn't you? Answer out loud please[.]

A. Yes, sir.

On redirect-examination, the State asked Mr. Bennett "what is right now is [*sic*] the truth. Where did these drugs come from?" Mr. Bennett responded that "[m]y testimony that I gave in my trial that I said my uncle gave me the drugs or handed the drugs to me..." was the truth. Mr. Dodson then closed with the following recross-examination:

Q. So as I understand this, that is the truth today?

A. Yeah.

Q. According to Ricky Bennett. And according to Ricky Bennett when this was fresh in your mind in 1995, the truth was that you didn't know any drugs were in the car, wasn't it?

A. Nope, that's right.

Q. That's exactly what you testified to back then, didn't you?

A. What I testified.

Q. You didn't see anybody with any drugs, you didn't know any drugs were in the car, you didn't know anything about satchel; isn't that right?

A. That's right.

Q. Which truth do we believe?

Finally, Mr. Bennett's testimony concluded when the trial judge questioned the witness as follows:

> THE COURT: Mr. Bennett, I have just this one question. I believe you testified — today, you have testified, that at your trial your uncle gave you the drugs that were found under the seat. Is that true?
>
> THE WITNESS: Yes, it is.

On appeal, Mr. Dodson contends that the refusal of the trial court to recognize Mr. Bennett's invocation of the Fifth Amendment was error, "resulting in the forced adoption by the witness of testimony favorable to the State." The State responds that Mr. Dodson does not have standing to assert Mr. Bennett's Fifth Amendment rights. We agree.

■ A witness's right not to incriminate himself or herself is personal, and another person does not have standing to assert a violation of the witness's Fifth Amendment rights. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 (1988); *Shinsky v. State*, 250 Ark. 620, 466 S.W.2d 911 (1971). Consequently, Mr. Dodson does not have standing to assert that Mr. Bennett's right not to incriminate himself was violated. In addition to asserting Mr. Bennett's Fifth Amendment rights, Mr. Dodson also contends that he was deprived of his own Sixth Amendment right to confront witnesses against him when the State was allowed to call Mr. Bennett knowing that he would invoke the Fifth Amendment.

■ We have held that neither the prosecution nor the defense is permitted to call a witness knowing that the witness will claim his testimonial privilege. *Hamm v. State*, 301 Ark. 154, 782 S.W.2d 577 (1990); *Kiefer v. State*. 297 Ark. 464, 468, 762 S.W.2d 800, 801 (1989). In *Kiefer*, we went on to explain that the "evil in this situation lies not in the mere calling of a witness but in the asking of a series of questions, each of which she refuses to answer on privilege against self-incrimination grounds, thus creating the equivalent of testimony in the minds of the jurors." *Id.* at 469, 762 S.W.2d at 802 (citing *Sims v. State*, 4 Ark. App. 303, 631 S.W.2d 14 (1982) and *Douglas v. Alabama*, 380 U.S. 415 (1965)). Likewise, in *Foster v. State*, 285 Ark. 363, 687 S.W.2d 829 (1985), we adopted the following language in holding that the trial court erred when it allowed the prosecutor to call a witness even though both the court

and the prosecutor knew that the witness would be advised to invoke her Fifth Amendment privilege against self-incrimination:

> The evil in the non–testimony of such a witness is not the mere calling of the witness, but the obvious inferences drawn by a jury to a series of questions, to all of which the witness refuses to answer on Fifth Amendment grounds. In that case the questions themselves "may well have been the equivalent in the jury's mind of testimony." *Douglas v. Alabama*, 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934, 937 (1965). Such improper questioning, not technically being testimony at all, deprives an accused of his right to cross-examine the witnesses against him as guaranteed by the Confrontation Clause of the Sixth Amendment to the federal constitution [made obligatory on the states by the Fourteenth Amendment.] *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Douglas v. Alabama, supra*.

*Foster v. State,* 285 Ark. at 370, 687 S.W.2d at 832 (quoting from *Sims v. State, supra*). Thus, allowing the State to call a witness while knowing that witness will invoke his or her Fifth Amendment privilege, deprives the defendant of his Sixth Amendment right to cross-examine the witnesses against him.

In *Douglas v. Alabama*, the witness called by the State invoked his privilege and refused to answer questions. *Douglas v. Alabama*, 380 U.S. 415 (1965). The trial judge ruled that the privilege was not applicable and ordered him to answer, but the witness persisted in refusing to answer. *Id.* The trial judge then allowed the State to treat the witness as a hostile witness and conduct a cross-examination, during which the State produced an alleged confession signed by the witness and proceeded to read from the document "under the guise of cross-examination to refresh [the witness's] recollection" *Id.* at 416. The State's attorney would pause after every few sentences and ask the witness if he had made the statement, and each time, the witness would assert the privilege and refuse to answer. *Id.* This form of questioning continued until the entire document had been read. *Id.* The United States Supreme Court held that the "petitioner's inability to cross-examine [the witness] as to the alleged confession denied him the right of cross-examination secured by the Confrontation Clause." *Id.* at 419. The witness's reliance upon the privilege created a situation in which the jury might improperly infer that the statement had been made and that it

was true. *Id.* Due to the fact that the State's attorney was not a witness, the inference from his reading that the witness made the statement could not be tested by cross-examination. *Id.* Similarly, the witness could not be cross-examined on a statement imputed to him but not admitted by him. *Id.*

■ The instant case is distinguishable from *Douglas v. Alabama.* There, the Court stated that "effective confrontation of [the witness] was possible only if [he] affirmed the statement as his. However, [he] did not do so, but relied on his privilege to refuse to answer." *Id.* at 420. Here, while the witness initially attempted to rely on his privilege, he eventually began to cooperate and, in the end, affirmed his earlier testimony. Moreover, Mr. Dodson's attorney was able to fully cross-examine Mr. Bennett about the conflicting testimony he had given at his own trial and at Mr. Dodson's first trial. Thus, Mr. Bennett affirmed his earlier testimony, and Mr. Dodson accomplished effective confrontation of the witness. We therefore hold that Mr. Dodson was not deprived of his Sixth Amendment right to cross-examine the witness. Accordingly, we affirm on this point.

### 4. Trial Court's Statement to the Jury

Mr. Dodson argues that the trial court erred in making the following statement to the jury during voir dire: " . . . with possession of Schedule IV controlled substance namely marijuana in violation of Arkansas Code Annotated 5-64-101, a Class C felony . . . " According to Ark. Code Ann. § 5-64-401(c), possession of marijuana is a class C felony only if it is the defendant's third or subsequent drug conviction. Mr. Dodson contends therefore that the trial court's reference to a class C felony effectively told the jury that he had two prior drug convictions, and thereby violated the principle that prior convictions should not be disclosed to the jury until guilt is determined. In response, the State suggests that Mr. Dodson's argument is barred because he failed to abstract the trial court's statement to the jury or his objection to the statement. We agree.

■ The challenged statement appears for the first time in the argument portion of Mr. Dodson's brief. The record on appeal is confined to that which is abstracted and cannot be contradicted or

supplemented by statements made in the argument portions of the briefs. *Jones v. State*, 327 Ark. 85, 937 S.W.2d 633 (1997). In addition, transcript or record references in the appellant's argument are no substitute for a proper abstract. *Id.* Mr. Dodson also states for the first time in the argument portion of his brief that the trial court made the statement "over the objection of the Appellant," but "such scattered references are not a substitute for a proper abstract." *Moncrief v. State*, 325 Ark. 173, 176, 925 S.W.2d 776, 778 (1996). Accordingly, we must affirm on this point without reaching the merits.

### 5. Admonishment by the Trial Court

For his final point on appeal, Mr. Dodson asserts that the trial court improperly admonished the jury after the State made an untimely objection to Mr. Dodson's closing argument. The State responds that this point must be affirmed because Mr. Dodson did not abstract his closing argument, the State's objection, and the trial court's admonition to the jury. The State is correct. This failure to abstract precludes us from considering Mr. Dodson's final point on appeal. *See Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995).

Affirmed.