Anthony Joseph LYTLE  *v.*  STATE of Arkansas

CA CR 04-844                                209 S.W.3d 421

Court of Appeals of Arkansas
Opinion delivered June 8, 2005

244

*David W. Talley, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Anthony Joseph Lytle was charged with over-possession of pseudoephedrine, possession of pseudoephedrine with intent to manufacture methamphetamine, and possession of drug paraphernalia. After a jury trial, he was

convicted of over-possession of pseudoephedrine and acquitted of the remaining charges. Mr. Lytle was sentenced as a habitual offender to eleven years in prison. He now appeals, arguing that the trial court erred in failing to strike the testimony of State's witness April Church, and that there was insufficient evidence to support the verdict. We affirm.

■■ Because one of Mr. Lytle's arguments is a challenge to the sufficiency of the evidence, we address that argument first, examining all of the evidence, including that which was allegedly admitted erroneously. *See Cook v. State*, 77 Ark. App. 20, 73 S.W.3d 1 (2002). Pursuant to Ark. Code Ann. § 5-64-1101(a) (Supp. 2003), it is unlawful for a person to possess more than nine grams of pseudoephedrine. In deciding whether there was sufficient evidence to support appellant's conviction for this offense, we consider only that evidence that supports the verdict and determine whether the verdict is supported by substantial evidence. *See Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

April Church testified that on the night of May 17, 2003, she was working the cash register alone at an Exxon station, and was getting ready to close the store. Mr. Lytle pulled up in a van, entered the store, and got a cup of ice. Ms. Church stated that Mr. Lytle bumped into her, that his hands were red and black and appeared burned, and that he looked very nervous, which made her nervous. After Mr. Lytle paid for the ice and exited the store, Ms. Church locked the door behind him.

Ms. Church stated that after he left the store, Mr. Lytle stayed in the parking lot looking around in the van for several minutes. She stated that he opened the sliding door and looked inside the van, and also looked underneath the front passenger seat and was "moving around." Ms. Church continued to be nervous and called the police, and when they arrived Mr. Lytle was still there.

Officer Joe Nash testified that he observed Mr. Lytle attempt to drive off, but that he verbally effected a stop in the Exxon parking lot. Mr. Lytle got out of the van and gave Officer Nash permission to search the van. Mr. Lytle represented to Officer

Nash that he was working on the van for a lady, but did not know her name. Officer Nash confirmed that the van did not belong to Mr. Lytle, and he never determined who owned it.

Officer Nash stated that during the search of the van he found a black bag in the front seat that contained ten to fifteen unused syringes. Officer Nash then walked to the back of the vehicle, and Mr. Lytle said, "Here, let me show you how to open it," and opened the rear door. Officer Nash searched that area and found a can of Sterno, which is a heating source. Officer Nash stated that Mr. Lytle was nervous during this episode, and was cited for having an invalid driver's license.

Officer Byron Sarter also participated in the search of the van at the Exxon station. Officer Sarter found a container under the front passenger's seat that was visible when looking into the van through the side sliding door. The container was wrapped in duct tape, and Mr. Lytle asked, "You want me to open it for you?" Officer Sarter opened it himself, and it contained some coffee filters and some one-by-two-inch baggies. The container also contained a clear plastic bag of a powdery white substance. The white substance was taken to the crime lab, and it tested positive for pseudoephedrine and weighed 63.279 grams.

Investigator Brent Reeves testified about how methamphetamine is manufactured, and explained that pseudoephedrine, coffee filters, and a heat source are necessary elements. He further explained how methamphetamine may be injected using a syringe. Investigator Reeves indicated that when illegal drugs or precursors are transported, they are always hidden in containers, and that in such cases the person transporting the contraband seldom owns the vehicle.

Mr. Lytle and his fiancee testified for the defense. Both witnesses stated that on the day of his arrest she dropped him off at a house to repair a van owned by Angie Lewis. Mr. Lytle stated that he was fixing a broken fan, and then drove the van to the convenience store to get a drink and cigarettes, and to call his fiancee to pick him up. Mr. Lytle denied knowledge of any of the suspected contraband, and stated that had he known it was in the van he would not have consented to a search.

We first address Mr. Lytle's argument that there was no substantial evidence that he possessed the sixty-three grams of pseudoephedrine. Mr. Lytle notes that the van did not belong to him, and further notes that the pseudoephedrine found in the

container was not visible until the container was opened. Under these circumstances, he asserts that there was no evidence that he possessed the contraband or even knew it was there.

■ ■ It is not necessary for the State to prove literal physical possession of contraband in order to prove possession; possession of contraband can be proven by constructive possession, which is the control or right to control the contraband. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). In order to prove constructive possession, the State must establish beyond a reasonable doubt that the defendant exercised care, control, and management over the contraband. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). Constructive possession may be established by circumstantial evidence if it indicates guilt and excludes every other reasonable hypothesis. *Hodge v. State*, 303 Ark. 375, 797 S.W.2d 432 (1990).

■ We hold that there was substantial evidence that Mr. Lytle constructively possessed the pseudoephedrine. In *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002), the supreme court held that a single occupant in a borrowed car is only subject to the general inquiry for constructive possession, without any inquiry into the elements for joint occupancy. An accused's suspicious behavior coupled with proximity to the contraband is clearly indicative of possession. *Id.*

■ ■ In this case Mr. Lytle was alone and in control of the van, and the pseudoephedrine was found under the front passenger's seat, where Ms. Church saw him looking and "moving around" just minutes earlier. During the search, Officer Sarter observed Mr. Lytle to be very nervous and upset, and sweating profusely. Mr. Lytle gave permission to search, and during the search he showed Officer Nash how to open the back door, and tried to help Officer Sarter open the container containing the pseudoephedrine. And while the car did not belong to Mr. Lytle and the contraband was concealed, there was testimony that this is a common scenario in the drug trade. The jury was not required to give credit to the testimony of the defense witnesses, particularly that of Mr. Lytle himself, because he was the person most interested in the outcome of the trial. *See Winbush v. State*, 82 Ark. App. 365, 107 S.W.3d 882 (2003). There was clearly sufficient evidence of Mr. Lytle's control over the contraband.

Mr. Lytle's remaining argument is that the trial court erred in failing to strike the testimony of Ms. Church. During cross-examination, Ms. Church was questioned about whether she gave a written statement to the police, and she replied:

> I previously gave a statement to law enforcement officers about this incident. I gave it that night at the scene. I don't remember if this was a written statement or if I gave it orally to the officer at the scene. I did not go to the sheriff's office for any reason that night. When I spoke to the officers it was there at the store, both inside the store and outside of the store. I'm pretty sure I wrote something down as to a statement and I signed it. I remember writing something down. I can't remember the name of who I gave it to[.]

Mr. Lytle's counsel stated, "I believe that now that she's testified I'm entitled to any summary or synopsis that law enforcement has if [the prosecutor] can make arrangements for that." The prosecutor responded that the only two officers on the scene that night were Officers Nash and Sartor, and that he did not have any written statement. After all of the remaining witnesses for the State testified and the State rested, and Mr. Lytle's motions for directed verdict were denied, he made a motion to strike Ms. Church's testimony and instruct the jury to disregard it. The motion was premised on the fact that the witness had made a prior statement that was not provided to the defense.

The trial court denied Mr. Lytle's motion, and he now argues that the disputed testimony should have been stricken pursuant to Ark. Code Ann. § 16-89-115 (Supp. 2003), which provides in pertinent part:

> (b) After a witness called by the state has testified on direct examination, the court, on motion of the defendant, shall order the state to produce any statement, as defined in subsection (e) of this section, of the witness in the possession of the state which relates to the subject matter as to which the witness has testified. If the entire contents of the statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.
>
> . . . .
>
> (d) If the state elects not to comply with an order of the court under subsection (b) or (c) of this section to deliver to the defendant

any statement, or portion thereof, as the court may direct, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

Subsection (e) provides that a "statement" under this section includes a "written statement made by the witness and signed or otherwise approved or adopted by him[.]" Mr. Lytle asserts that no explanation was given by the State for failing to produce the written statement, and that the trial court should have granted his motion to strike the testimony.

We find no error in the trial court's refusal to strike Ms. Church's testimony. As an initial matter, we are unable to deduce from the record whether a written statement ever existed. While Ms. Church indicated she gave a written statement, Officer Nash testified, "Ms. Church didn't write any statement," and Officer Sarter testified, "I don't believe I had any contact with her." Officer Sarter indicated that he never received any written statement. Moreover, the prosecutor represented that he did not have a statement in his possession. Mr. Lytle did not ask the trial court to resolve the conflicting testimony, and it was his burden to bring up a record sufficient to demonstrate error. *See Johnson v. Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992). From the record before us we are unable to ascertain whether Ark. Code Ann. § 16-89-115 (Supp. 2003) is even applicable.

Even were we to assume that a written statement was in the State's possession, Mr. Lytle failed to make the timely and appropriate objections necessary to preserve this issue for review. In *Gruzen v. State*, 276 Ark. 149, 634 S.W.2d 92 (1982), the supreme court held that an issue must be presented in a timely and appropriate manner. In that case, the appellant waited until after both sides rested, and then requested to read to the jury a written prior statement given by one of the State's witnesses, but not disclosed by the State. The same statutory provision was at issue in that case, and the supreme court held that there was no error by the trial court in refusing the relief requested in part because "both sides had rested, and appellant had known of the error for a day before he informed the trial judge and requested corrective action."

In the case at bar, Mr. Lytle indicated that he was entitled to the statement during cross-examination of Ms. Church,

but he never received a ruling on any motion and the trial court never ordered the State to produce it. By the time Mr. Lytle moved to strike Ms. Church's testimony, any request for corrective action was untimely because it was not made at the first opportunity, but rather after the State rested its case. Moreover, at no time was there any basis to grant a motion to strike testimony, given that the State had not been ordered to produce the statement, and thus did not elect not to comply with any order as contemplated by subsection (d) of the statute. For these reasons, we find no merit to Mr. Lytle's argument that the trial court erred in failing to strike the witness's testimony.

Affirmed.

NEAL, CRABTREE, and ROAF, JJ., agree.

HART and GRIFFEN, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. I agree that sufficient evidence supports Mr. Lytle's conviction. I respectfully dissent, however, because the trial court erred by failing to comply with Ark. Code Ann. § 16-89-115 (Supp. 2003).

The majority affirms for two reasons. The majority cites *Gruzen v. State*, 276 Ark. 149, 634 S.W.2d 92 (1982), for the general proposition that an issue must be presented in a "timely and appropriate manner" and holds that Mr. Lytle "failed to make the timely and appropriate objections necessary to preserve this issue for review." I disagree. Immediately after Ms. Church testified on cross-examination that she made a written statement to the police, Mr. Lytle asked for Ms. Church's written statement. This motion was timely. The case of *Blakemore v. State*, 268 Ark. 145, 594 S.W.2d 231 (1980), supports this conclusion. In *Blakemore*, at the beginning of cross-examination by defense counsel, a witness testified regarding a written statement he made, and defense counsel "asked for" a copy for the purposes of cross-examination, and further made a "request" for another witness's statement. *Blakemore*, 268 Ark. at 146, 594 S.W.2d at 232. Citing the statute, the Arkansas Supreme Court observed that "after a witness called by the State has testified on direct examination, the court 'shall,' on motion of the defendant, order the State to produce any relevant statement of the witness in its possession." *Id.*, 594 S.W.2d at 233. The court held that the "requests for the statements were timely." *Id.* at 146-47, 594 S.W.2d at 233. Thus,

Mr. Lytle's request for Ms. Church's statement, which was made at the same time as the request made in *Blakemore*, was likewise timely.

Moreover, contrary to the majority's assertion, Mr. Lytle's objection was appropriate. In *Blakemore*, the State argued that the defense counsel should have moved for the witness's testimony to be stricken. The Arkansas Supreme Court, however, again referred to the statute and noted that this "remedy is available only when the State elects not to comply with an order of the court to deliver a statement to the defendant." *Id.* at 147, 594 S.W.2d at 233. The court held, "Nor was any further objection by counsel necessary, because he had made known to the court the action he desired the court to take." *Id.* Because the request during cross-examination for the witness's statement was appropriate in *Blakemore*, Mr. Lytle's request during cross-examination for Ms. Church's statement was likewise appropriate. Mr. Lytle made an additional — though not required — motion at the end of the State's case to renew and buttress his previous request. It is this second motion that the majority deems both untimely and inappropriate. But because Mr. Lytle made a timely and appropriate request during Ms. Church's cross-examination, the issue was preserved for review.

In the alternative, the majority further states that it is unable to deduce from the record whether a written statement ever existed and observes that "Mr. Lytle did not ask the trial court to resolve the conflicting testimony, and it was his burden to bring up a record sufficient to demonstrate error." Those observations, however, beg the question.

The statute requires that "[a]fter a witness called by the state has testified on direct examination, the court, on motion of the defendant, *shall* order the state to produce *any statement* . . . of the witness *in the possession of the state* which relates to the subject matter as to which the witness has testified." Ark. Code Ann. § 16-89-115(b) (Supp. 2003) (emphasis added). Thus, upon motion of the defendant, it was the trial court's statutorily mandated duty to order the State to produce any statement that it may have possessed. Here, the trial court failed to do so. Furthermore, the trial court's duty to order the State to produce any statement in its possession would have preceded the court's resolution of any conflicting testimony regarding the existence of the statement, as the court would not have had to resolve the conflict absent Mr. Lytle's request that the court order production of any existing

statement. *See Hill v. State*, 331 Ark. 312, 962 S.W.2d 762 (1998) (noting the requirement that the trial court make an inquiry as to the whereabouts of the purported statement); *Rush v. State*, 252 Ark. 814, 481 S.W.2d 696 (1972) (discussing the duty of the trial court to conduct any inquiry necessary to aid the court in the discharge of its responsibility under the statute). Thus, Mr. Lytle's failure to ask the trial court to resolve the conflicting testimony cannot serve as a bar to appellate review, as the trial court did not first order the State to produce any statement that it may have possessed. Accordingly, we should make a limited remand of this case to the trial court to carry out its statutorily mandated duty to determine the whereabouts of the purported statement, and if it finds that there was no statement, we could affirm when the case returns.

For these reasons, I respectfully dissent.

GRIFFEN, J., joins.