Joe A. SIMS, III *v.* STATE of Arkansas

CA CR 81-166                           631 S.W. 2d 14

Court of Appeals of Arkansas
Opinion delivered March 31, 1982

*Tom Carpenter* and *James P. Massie,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

MELVIN MAYFIELD, Chief Judge. The jury found Joe Sims guilty of battery in the first degree and fixed his punishment at twenty years with a $15,000 fine. In this appeal he contends the state committed error by calling Lynn Hickman as a witness when it knew he would assert the privilege against self-incrimination.

According to the testimony of the complaining witness, Roy Dancey, he was playing pool in a Little Rock recreation center on March 27, 1978, when someone kicked the doors open and three men with guns burst in. Two of them stood by the door while the appellant shot Dancey five times. Dancey knew and recognized appellant and one of the other men, Lynn Hickman, but not the third one.

During the prosecuting attorney's opening statement to the jury there was no objection to the following remarks:

The state's primary witness today is the victim in this case. That's Mr. Roy Lee Dancey, Jr. Mr. Dancey had known Mr. Sims for quite a while. He had also known the codefendant in this case, Mr. Lynn Hickman. . . . Mr. Hickman was tried in this court back on July the 20th, 1979, for his participation in this case and was found guilty by the Court.

. . . .

Mr. Hickman will take the stand and I will examine him about the incident. Mr. Hickman, I am sure, will be quite uncooperative. In fact, he has so told me previous to trial. But we'll see how that goes.

After opening statements the state called Roy Dancey who testified as above outlined and then Hickman was called. After giving his name, he asked for his court-appointed public defender who announced that the witness had indicated he wished to assert his Fifth Amendment privilege against self-incrimination. The jury was then excused.

In the ensuing discussion it was discovered that the time had run for Hickman to perfect an appeal of his conviction. The prosecuting attorney stated his belief that Hickman had no Fifth Amendment right in this case and offered him immunity regarding any other acts committed on the night in question. Hickman still refused to testify. The court then informed him that he would be ordered to testify and the jury was returned to the courtroom over the objection by defense counsel that Hickman's refusal to testify might give rise to an inference of a conspiracy and prejudice appellant.

Hickman was called to the stand again and, after answering a few identification questions and admitting that he had been convicted of battery in connection with this incident, stated that he wished to "take the Fifth." The court then ordered him to answer questions but the witness said he was "going with the Fifth." The jury was again removed from the courtroom and the court instructed his appointed counsel to inform Hickman that he could be held in

contempt and that his parole eligibility could be affected. After this was done and the court was assured that Hickman understood the possible effect of not testifying and that he still elected not to testify, the court had the jury brought back into the courtroom.

Before the jury returned, however, the court denied appellant's motion for mistrial. During the discussion of that motion it was revealed that the court had appointed counsel for Hickman earlier that morning upon being informed (possibly by the prosecutor) that Hickman intended to invoke his privilege against self-incrimination. But the court stated that as early as five minutes before "we came in court" the appointed attorney said he had no idea of what Hickman would do.

The state admits that reversible error can be made by calling and questioning a witness who refuses to testify on the basis of the Fifth Amendment. The state's brief puts it this way:

> The evil in the non-testimony of such a witness is not the mere calling of the witness, but the obvious inferences drawn by a jury to a series of questions, to all of which the witness refuses to answer on Fifth Amendment grounds. In that case the questions themselves "may well have been the equivalent in the jury's mind of testimony." *Douglas* v. *Alabama,* 380 U.S. 415, 419, 85 S. Ct. 1074, 13 L. Ed. 2d 934, 937 (1965). Such improper questioning, not technically being testimony at all, deprives an accused of his right to cross-examine the witnesses against him as guaranteed by the Confrontation Clause of the Sixth Amendment to the federal constitution [made obligatory on the states by the Fourteenth Amendment.] *Dutton* v. *Evans,* 400 U.S. 74, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970); *Frazier* v. *Cupp,* 394 U.S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (1969); *Douglas* v. *Alabama, supra.*

In *Douglas* v. *Alabama* a witness who refused to testify on the basis of the privilege against self-incrimination was declared a hostile witness and in the form of cross-examina-

tion the state was permitted to read from a confession signed by the witness with the prosecutor pausing after every few sentences to ask: "Did you make that statement?" The court said:

> The alleged statements clearly bore on a fundamental part of the State's case against petitioner. The circumstances are therefore such that "inferences from a witness' refusal to answer" added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.

On the other hand, in *Frazier* v. *Cupp* the prosecutor included in his opening statement a summary of the testimony he expected to receive from a witness who subsequently refused to testify. The court found no constitutional violation because the testimony was not a "vitally important part of the prosecution's case." And in *Dutton* v. *Evans* the court rejected the contention that the state court conviction should be reversed because of denial of the constitutional right of confrontation saying, "This case does not involve evidence in any sense 'crucial' or 'devastating' as did all the cases just discussed."

There is another dimension to this matter illustrated by the case of *United States* v. *Compton*, 365 F. 2d 1 (6th Cir. 1966). That case, an appeal from a federal district court, dealt with a question of prosecutorial misconduct and stated this general rule:

> Government counsel need not refrain from calling a witness whose attorney appears in court and advises court and counsel that the witness will claim his privilege and will not testify. However, to call such a witness, counsel must have an honest belief that the witness has information which is pertinent to the issues in the case and which is admissible under applicable rules of evidence, if no privilege were claimed. It is an unfair trial tactic if it appears that counsel calls such a witness merely to get him to claim his privilege before the jury to a series of questions not pertinent to the

issues on trial or not admissible under the applicable rules of evidence.

The conviction in *Compton* was reversed because counsel for the government, under the guise of a question, was allowed to read a long statement alleged to have been given to an F.B.I. agent by the witness who invoked the privilege against self-incrimination. The court said only the last sentence of the statement had any bearing on the case and "by reason of this prejudicial trial tactic we must reverse the judgment."

On the other hand, this issue was before the United States Supreme Court in *Namet* v. *United States*, 373 U.S. 179, 83 S. Ct. 1151, 10 L. Ed. 2d 278 (1963) where the court said the record would not support a finding of prosecutorial misconduct and that any inferences raised by questions to which testimonial privilege was invoked were at most cumulative.

In *Price* v. *State*, 37 Wis. 2d 117, 154 N.W. 2d 222 (1967), cited by both parties here, the court said "no error is committed by the mere fact of calling a witness who will claim the privilege." And citing *Namet* v. *United States*, the court said that case "makes it clear that the forbidden conduct is the 'conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege.'" In addition, the court said any unfavorable inference would have to add "critical weight" to the state's case in order to have a reversible effect. "Critical weight" was defined as "decisive weight — the evidentiary inference that tips the scales of justice from innocence to guilt."

Applying the above cases to the case at bar, we find no reversible error.

In the first place, we cannot say the prosecutor was guilty of misconduct. It does not appear that the witness Hickman was called to the stand merely to get him to claim, before the jury, his privilege to questions not pertinent to the issues or not admissible under the rules of evidence. As the trial court noted, the first witness, Roy Dancey, testified that

Hickman was one of the three men who burst in the recreation center and that he stood by the door while appellant did the shooting. There was no attempt and no need to try to build a case out of inferences arising from the use of the testimonial privilege against self-incrimination.

In the second place, whether we are considering prosecutorial misconduct or the denial of the constitutional right of confrontation, the inferences from Hickman's refusal to testify would have to add "critical weight" to the state's case. At most, any inference here would only bolster Dancey's testimony. All the elements of the offense charged were already in evidence and none needed to be supplied by an inference from Hickman's refusal to testify.

In closing argument, the prosecuting attorney suggested that Hickman (whom the jury knew was in prison) refused to testify because he was afraid to serve his sentence in the same prison as appellant. In closing argument, defense counsel claimed that Hickman's refusal to testify hurt their contention that Sims was not present at the recreation center at the time of the shooting.

After the jury retired, counsel for appellant made this motion:

> On the record again, your Honor, I'd like to object in terms of — and move for a mistrial — in terms of his comments and statements about Lynn Hickman being convicted for the same offense and bringing that up again in his closing. I think that was totally improper and prejudicial.

The motion certainly came too late to make any difference. In his opening statement the prosecutor told the jury that Hickman had been convicted for his participation in this case. He also specifically told the jury that "he's serving his sentence." No objection was made to either statement. Then when Hickman was on the stand he admitted he had been convicted in connection with this incident. Again there was no objection. Under this state of the record, in addition to all we have already said, no

310

reversible error could possibly result from the court's failure to grant a mistrial for "bringing that up again in his closing." And finally, the trial court gave the jury the standard instruction that closing arguments of counsel are not evidence and any argument, statement, or remark having no basis in the evidence should be disregarded.

The judgment is affirmed.