John W. KIEFER *v.* STATE of Arkansas

CR 88-49                                          762 S.W.2d 800

Supreme Court of Arkansas
Opinion delivered January 17, 1989

*Burris & Berry,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Blake Hendrix,* Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, John W. Kiefer, was convicted of rape and incest. He raises three points of appeal. First, he contends his statement admitting having sexual intercourse with his 14-year-old daughter should have been suppressed because the officer who arrested him, Hoxie Police Chief Paul Hendrix, violated Ark. R. Crim. P. 2.3 by failing to inform him he did not have to come to the chief's office after Hendrix requested that he do so. Also under this point, he argues the form he signed, acknowledging his rights had been explained, was inadequate and that his statement should have been suppressed because he asked to consult with a lawyer before making it and was not afforded that right. Second, he argues it was error for the prosecutor to have called Kiefer's wife to the stand, knowing that she would refuse to testify. Third, he argues insufficiency of the evidence of forcible compulsion, an element of the rape conviction.

## 1. Suppression

Kiefer moved to suppress evidence that he had confessed. At a suppression hearing, Chief Hendrix testified he was called by a social service worker to meet with her at Hoxie High School concerning a charge of rape and incest. That meeting resulted in his calling Kiefer to come to his office. Hendrix testified he had no warrant for Kiefer's arrest, but he felt he had probable cause to arrest Kiefer. He "had belief" that a felony had been committed.

Kiefer, accompanied by his wife, drove himself to Hendrix's office. Hendrix testified he informed Kiefer of his rights and then took Kiefer's statement in which Kiefer admitted having intercourse with the daughter but said he had not compelled her to do it. Hendrix testified that it was not until after Kiefer made his statement that Kiefer mentioned getting a lawyer. We need not address this matter further, as no authority is cited with respect to it and the judge was entitled to believe Hendrix's testimony.

Hendrix conceded he did not inform Kiefer he did not have to come to the office. Rule 2.3 states, in part, that "[i]f a law enforcement officer . . . requests any person to come to . . . a police station . . . he shall take such steps as are reasonable to make clear that there is no legal obligation to comply with such a request." Kiefer cites only *Foster* v. *State*, 285 Ark. 363, 687 S.W.2d 829 (1985), in support of his contention that the conviction must be reversed because of noncompliance with the rule.

In the *Foster* case we mentioned the failure to comply with the rule, but the burden of the decision lay upon the misuse by police officials of the prosecutor's authority to summon a person to his office for questioning. Ms. Foster had been awakened at 2:30 a.m. and taken to the prosecutor's office by four police officers. In addition to noting the failure to tell her she did not have to accompany the officers, we pointed out that a prosecutor may not thus misuse the power given to him by Ark. Code Ann. § 16-43-212 (1987), and that it is wrong for the police to use the prosecutor's authority for a police investigation.

The question before us thus becomes what if in the *Foster* case, as in this one, the only violation had been failure to comply with the rule. In *Burks* v. *State*, 293 Ark. 374, 738 S.W.2d 399 (1987), we had a similar situation. There we concluded that failure to comply with the rule required us to consider the interrogation of one who voluntarily complied with a request to appear at a police office to have been a "custodial interrogation," and suppression was required unless there was probable cause to seize the person making the statement sought to be suppressed. We then noted that probable cause exists if the officer has reasonably trustworthy information which would lead a person of reasonable caution to believe that a felony was committed by the person to be arrested, citing *Coble* v. *State*, 274 Ark. 134, 624 S.W.2d 421 (1981). We concluded there was probable cause to arrest Burks at the time the evidence against him was obtained from him, and thus his conviction was affirmed.

Kiefer's daughter, the alleged victim, testified she had told a social worker, Sally Golden, about her father's conduct. Sally Golden is the person with whom Chief Hendrix met at Hoxie High School where he obtained the information which

formed the basis of his request that Kiefer come to his office. The court was correct in refusing to suppress Hendrix's testimony about Kiefer's statement to him, as there was probable cause to arrest Kiefer at the time the statement was made, and Kiefer had been informed of his rights when he volunteered his statement.

■ We decline to address the argument that the rights form was "confusing," as no authority is cited in support of it, and it is not convincing. *Bonds* v. *State*, 296 Ark. 1, 751 S.W.2d 339 (1988); *Garrett* v. *State*, 294 Ark. 556, 744 S.W.2d 731 (1988); *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

## 2. Calling Mrs. Kiefer

The prosecutor called Mrs. Kiefer, the appellant's wife, to the stand. As she approached, she informed the court she did not wish to testify. She was sworn in and then again informed the court she did not wish to testify. A hearing was held out of the presence of the jury. The judge asked Mrs. Kiefer if her wish not to testify was based upon her desire not to incriminate herself. She said she did not understand. The judge then appointed an attorney to discuss Mrs. Kiefer's rights with her. The attorney informed the court that Mrs. Kiefer wished to assert her Fifth Amendment right not to testify. She was not recalled to the witness stand.

Kiefer argues his motion for a mistrial should have been granted because the prosecutor called Mrs. Kiefer to the stand, knowing of her desire not to testify. In *Foster* v. *State, supra,* we wrote that it was error for the court to permit the prosecution to call a witness to the stand where both the court and the prosecutor knew that the witness would be advised to assert her Fifth Amendment privilege not to testify. There, the attorney for the witness had asserted her privilege at an earlier bail bond hearing and had informed the court and the prosecutor the witness would assert the privilege if called to testify at trial.

■ In this case, there is no evidence that the court had any knowledge Mrs. Kiefer would assert her privilege. Although the prosecutor apparently knew Mrs. Kiefer had previously asserted she did not want to testify, nothing in the record shows she previously asserted any recognized privilege. In the *Foster* opinion, we quoted with approval the court of appeals decision in

*Sims* v. *State*, 4 Ark. App. 303, 631 S.W.2d 14 (1982), where it was said that the evil in this situation lies not in the mere calling of a witness but in the asking of a series of questions, each of which she refuses to answer on privilege against self-incrimination grounds, thus creating the equivalent of testimony in the minds of the jurors. *Douglas* v. *Alabama*, 380 U.S. 415, 85 S.Ct. 1704 (1965). The court did not permit that here, and there was no error in refusing to grant a mistrial.

### 3. Sufficiency of evidence

■ An element of the crime of rape, as charged in this case, is "forcible compulsion." Ark. Code Ann. § 5-14-103 (1987). Kiefer's daughter testified that Kiefer made her have sex with him, that she had asked him not to do it, and that he had been doing it ever since she was little. She was 15 at the time of the trial. We find the evidence of forcible compulsion was sufficient. In *Griswold* v. *State*, 290 Ark. 79, 716 S.W.2d 767 (1986), we held there was forcible compulsion in very similar circumstances. We noted, "[t]he age of the victim and the relationship of the victim to the assailant are key factors in weighing the sufficiency of evidence of force to prove rape." As in the *Griswold* case, we conclude that the testimony of the victim was sufficient to show that the sexual intercourse occurred without her consent.

Affirmed.

HICKMAN, J., concurs.

PURTLE, J., dissents.

DARRELL HICKMAN, Justice, concurring. The problem with the Rules of Criminal Procedure is that some of the rules are not procedural, they are substantive.

It is a universally accepted principle of law that courts cannot make substantive rules, that is, make law like a legislature does. It is based on the fundamental principles of of constitutional law which regulate the roles of the branches of government — separation of powers and checks and balances.

When governors or legislatures exceed their constitutional powers, the courts check them. When courts do so, there is not much to check them, save the people rising up to stop them. In a system that depends on respect for the law for its existence rather

than force, it is most difficult for the people to challenge unlawful acts of the judiciary. So a court exceeding its power is the most grievous violation of constitutional law there is.

In adopting some of the Rules of Criminal Procedure, we have overstepped our constitutional authority. Many of these rules in the area of arrest and search and seizure amount to legislative acts by a judicial body. The rules are attempts by this court to codify legislative acts and decisions of the United States Supreme Court. As a result, we often find ourselves trying to interpret substantive laws we have made rather than deciding cases on the basis of the Constitution and Supreme Court decisions interpreting the Constitution.

While it is handy to have a set of rules police officials can refer to, those rules should not issue from this court. We review and decide cases, not write legislation, and when we start writing substantive law, we step outside our role as a judicial body.

What is "procedural" about rules regulating police conduct involving search, seizure and arrest? Obviously, nothing. Procedural rules should address exactly that: what procedural steps should be taken in court. *See Miller* v. *State*, 262 Ark. 223, 555 S.W.2d 563 (1977).

A.R.Cr.P. Rule 2.3 is a substantive rule. It concerns the warning a police officer must give if a person is requested to come to the police station. It has nothing to do with the steps to be taken in court. Indeed, it attempts to regulate the conduct of parties acting entirely beyond the bounds and power of this court. Adopting such rules is like incorporating rules of the road into the Rules of Civil Procedure.

We have appointed a committee to update the Rules of Criminal Procedure, and some progress is being made. But the rules should be revised to delete the substantive portions entirely.

I find no error and would affirm the conviction.

JOHN I. PURTLE, Justice, dissenting in part. I cannot agree with that part of the opinion which puts this court's stamp of approval on the "grandstanding" of the state's attorney. In spite of his knowledge that the wife of the appellant was going to refuse to testify, the prosecuting attorney nevertheless called her to the

stand, and asked her incriminating questions, thereby causing her to invoke her Fifth Amendment right before the jury, and to have counsel appointed by the trial court.

While the victim was on the stand she was asked by the prosecutor if her mother didn't offer to pay her money not to come to testify in court. At a bench conference between the court and the attorneys the following conversation took place:

> DEFENSE COUNSEL: If—if—if the court please, this is his case in chief and what he's attempting to do and *has already brought before the jury what he says is a collateral crime.*
>
> STATE'S ATTORNEY: *By the mother.*
>
> THE COURT: Do you object?
>
> DEFENSE COUNSEL: *Yes sir, I object.*
>
> THE COURT: All right, *I'm going to sustain it* and I'm going to admonish the jury. I think it's—I think it needs to be admonished. [Emphasis added.]

In my opinion this colloquy was sufficient to inform the court that the mother intended to invoke her Fifth Amendment rights. She obviously knew the state was going to try to present her to the jury as a lying criminal.

In *Foster* v. *State*, 285 Ark. 363, 687 S.W.2d 829 (1985), we discussed the matter of a wife being called as a witness even though she was suspected of killing her husband. The state called her to the stand even though it knew she was going to invoke the Fifth Amendment. In our opinion we quoted from the Arkansas Court of Appeals (*Sims* v. *State*, 4 Ark. App. 303, 631 S.W.2d 14 (1982)), as follows:

> The evil in the non-testimony of such a witness is not the mere calling of the witness, but the obvious inferences drawn by a jury to a series of questions, to all of which the witness refuses to answer on Fifth Amendment grounds. In that case the questions themselves "may well have been the equivalent in the jury's mind of testimony." [Cites omitted.] Such improper questioning, not technically being testimony at all, deprives an accused of his right to cross-

examine the witnesses against him as guaranteed by the Confrontation Clause of the Sixth Amendment to the federal constitution . . . .

Even if the bench conference highlighted above was insufficient to notify the trial court that Mrs. Kiefer was going to exercise her Fifth Amendment right, the court was alerted to this when, after being called as a witness, she approached the bench and informed the court she did not wish to testify. At this point there should have been an in-chambers or a bench discussion concerning her refusal. Placing her on the stand before the jury and causing her to exercise her right, plus appointing a defense attorney, was sufficiently prejudicial to the appellant to require a mistrial.