Anthony C. MALONE *v.* STATE of Arkansas

CR 05-218                                                    217 S.W.3d 810

Supreme Court of Arkansas
Opinion delivered November 17, 2005

*David L. Dunagin*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant Anthony C. Malone appeals his conviction in the White County Circuit Court of one count of possession of cocaine with intent to deliver, for which he was sentenced to a term of forty years' imprisonment and a fine of $25,000, and one count of possession of marijuana with intent to deliver, for which he was sentenced to a term of four years' imprisonment, with the sentences to be served concurrently. Malone raises two issues on appeal. First, he argues that the circuit court erred in denying his motion to suppress, and, second, he claims that the evidence was insufficient to show that he was in possession of the contraband. We reject both of Malone's arguments and affirm.

This case comes to us on the State's petition for review of a decision of the court of appeals. *See Malone v. State*, 89 Ark. App. 281, 202 S.W.3d 540 (2005). The court of appeals determined that there was sufficient evidence of appellant's knowledge of and control over the contraband to support his conviction. However, the court of appeals reversed the circuit court's denial of Malone's motion to suppress and remanded the case. When this court grants review from a decision by the court of appeals, it reviews the case as though the appeal had originally been filed with this court. *See, e.g., McElyea v. State*, 360 Ark. 229, 200 S.W.3d 881 (2005). We affirm the order of the circuit court.

Malone was driving on Arkansas Highway 67/167 in Bald Knob at about 2:30 a.m., when he was pulled over by Officer Brandon Wilson of the Bald Knob Police Department for a broken

taillight. It was cold and snowing. Officer Wilson testified at the suppression hearing that he ran a registration check on the Texas license plate before approaching the car, which indicated that the car was registered to a Texas resident, Eddie Carter. In addition to Malone, there was one male passenger and one female passenger in the car, neither of whom was Eddie Carter. Officer Wilson testified that, upon his request, Malone promptly provided his identification and proof of insurance on the car, but that the two passengers provided their identification only after Officer Wilson requested the information several more times. No one provided proof of ownership or registration of the car. The proof of insurance stated that the car was insured in the name of the male passenger, Anthony Richardson. After Officer Wilson received identification on all three occupants, he returned to his patrol car to run a check on them. The check revealed that there were no outstanding warrants. Officer Wilson then asked Malone to come back to his patrol car so that he could issue a warning citation for the defective taillight.

Officer Wilson testified that during the course of writing a warning ticket, he asked Malone where he was going. Malone said he was taking his niece to her aunt's house. When Officer Wilson asked where she lived, Malone stated that she lived in Arkansas, although he did not know exactly where in Arkansas. Officer Wilson testified that Malone appeared nervous, was shaking uncontrollably, did not make eye contact with him, and answered his questions in a very quiet voice. When Officer Wilson was finished with the paperwork on the warning ticket, he requested permission to search the car. Malone said he did not feel it was right for him to give consent because it was not his car. Officer Wilson then testified that he requested permission from Richardson to search the car. Richardson refused to consent to a search, but he did state, "You might as well get your dog out." Officer Wilson stated that he then got his drug dog from the back of his patrol car and walked him around Richardson's car. The dog alerted, indicating that there were drugs in the trunk. Officer Wilson opened the trunk and immediately smelled a strong odor of marijuana. He then found a suitcase and several other bags in the trunk. The suitcase contained a little less than ten pounds of marijuana and two pounds of cocaine, with a combined street value in excess of $100,000. One of the other bags contained larger-sized male clothing, which appeared to be Richardson's size, and the other bag contained smaller male clothing that appeared to be too small to fit Richardson.

■ ■  We address Malone's argument challenging the sufficiency of the evidence first in order to preserve his right to freedom from double jeopardy. *See George v. State*, 356 Ark. 345, 350, 151S.W.3d 770, 772 (2004); *Dodson v. State*, 341 Ark. 41, 46, 14 S.W.3d 489, 492 (2000). Malone claims that the evidence presented at trial was insufficient to establish that he was in constructive possession of the drugs. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.*

■ ■  The question before us is whether there was substantial evidence to show that Malone was in constructive possession of the contraband found in the trunk of the car he was driving. To prove constructive possession, the State must establish that the defendant exercised "care, control, and management over the contraband." *McKenzie*, 362 Ark. at 257, 208 S.W.3d at 173. While we have held that constructive possession may be implied when the contraband is in the joint control of the accused and another, joint occupancy of a car, standing alone, is not sufficient to establish possession. *Jones v. State*, 355 Ark. 630, 634, 144 S.W.3d 254, 256 (2004); *Kilpatrick v. State*, 322 Ark. 728, 912 S.W.2d 917 (1995). There must be some other factor linking the accused to the contraband. *Id.* In other words, there must be some evidence that the accused had knowledge of the presence of the contraband in the vehicle. *Jones, supra.* Other factors to be considered in cases involving vehicles occupied by more than one person are:

> (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the

owner of the automobile, or exercises dominion and control over it; and (5) whether the accused acted suspiciously before or during the arrest.

*McKenzie, supra* (citing *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994)).

■ In this case, in order to prove constructive possession, the State must show more than the fact that Malone occupied a car in which contraband was discovered. As the driver of the car, Malone exercised dominion and control over it and had keys to the trunk; the odor of marijuana in the trunk was strong, supporting an inference that anyone who opened the trunk would know that the trunk contained contraband. There was evidence supporting an inference that the male clothing found in one of the bags in the trunk was too small for Richardson and could reasonably have been found to belong to Malone. Finally, Officer Wilson testified that Malone, the driver of the car, did not know where he was going other than "somewhere in Arkansas," and was nervous and shaking uncontrollably during the traffic stop, even though the stop was for a minor infraction. Viewing the evidence in the light most favorable to the State, as we must, we find that there was sufficient evidence of Malone's knowledge of and control over the contraband to support his conviction. *See Dodson, supra.*

■ Malone next argues that the circuit court erred in denying his motion to suppress evidence obtained after the initial traffic stop was concluded. In reviewing the trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Sims v. State*, 356 Ark. 507, 511-12, 157 S.W.3d 530, 533 (2004).

■■ In this case, there was nothing illegal about the initial traffic stop, which was based on a defective taillight. *See, e.g.*, *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). We have held, however, that in order to conduct a canine sniff of a motorist's vehicle after the legitimate purpose for the initial traffic stop has terminated, Rule 3.1 of the Arkansas Rules of Criminal Procedure requires the officer to possess reasonable suspicion that the person is committing, has committed, or is about to commit a felony or a

misdemeanor involving danger to persons or property. *Id.* The officer must develop reasonable suspicion to detain *before* the legitimate purpose of the traffic stop has ended. *Burks v. State,* 362 Ark. 558, 210 S.W.3d 62 (2005) (citing *Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004)). Whether there is reasonable suspicion depends upon whether, under the totality of the circumstances, the police have "specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Id.* (citing *Laime v. State,* 347 Ark. 142, 155, 60 S.W.3d 464, 473 (2001)).

The State first contends that the canine sniff occurred before the legitimate reason for the traffic stop was completed. Therefore, the State claims, the canine sniff was neither a Fourth Amendment violation nor a violation of Rule 3.1. *See Sims, supra; Illinois v. Caballes,* 543 U.S. 405 (2005) (holding canine sniff *during* traffic stop is not illegal search under Fourth Amendment). It is not clear from the testimony in this case exactly when Officer Wilson issued the warning citation. However, we hold that, even if the legitimate purpose of the traffic stop was complete before the canine sniff occurred, Officer Wilson possessed reasonable suspicion to detain Malone under Rule 3.1. *See* Ark. R. Crim. P. 3.1.

Our *de novo* review revealed the following facts supporting the State's contention that Officer Wilson had reasonable suspicion to detain Malone. First, Officer Wilson testified at the suppression hearing that Malone said he was taking his niece to her aunt's house, but when he asked where she lived, Malone stated that he did not know exactly, somewhere in Arkansas. This answer was evasive at best. Officer Wilson also testified that Malone was nervous, was shaking uncontrollably, did not make eye contact with him, and spoke in a very quiet voice. Finally, Officer Wilson's registration check on the Texas license plate indicated that the car was owned by a Texas resident, Eddie Carter. However, Mr. Carter was not in the car; no one in the car could produce proof of ownership or registration of the car; the car was hundreds of miles away from the home of its listed owner traveling north; and there was no indication that Mr. Carter had given permission to any of the occupants to possess the car.

This court has recently decided several cases involving the existence of reasonable suspicion justifying the detention of a motorist after the termination of a legitimate traffic stop. In *Lilley, supra,* the police noticed that Lilley was nervous and shaking, despite the heat being on in his car and in the patrol car; that his

rental-car agreement was for one-way travel, despite the fact that he planned to return to California after his visit with his mother in Virginia; that the rental was in another person's name (although Lilley was listed as an alternate driver); and that the car smelled of air freshener. We held that these facts did not give the police reasonable suspicion to detain Lilley to conduct a canine sniff of his car after the traffic stop was concluded. *Id.*

However, in *Burks, supra*, we held that police did have reasonable suspicion to detain appellant and conduct a canine sniff after the traffic stop was concluded. The officer testified that Burks appeared anxious and evasive with his answers. A license check revealed that Burks had been arrested for a firearms offense. Finally, Burks was driving a rental car due to be returned the day before that was not to be driven outside of California and Arizona, which we found could have given the officer reason to suspect that the car was stolen. We stated that under the totality of the circumstances, these facts established "specific, particularized, and articulable reasons" that criminal activity was afoot. *Id.*

We find that the facts in this case bear more similarities to those present in *Burks* than those in *Lilley*. In this case, Officer Wilson testified that Malone was nervous, evasive, and shaking uncontrollably. He did not make eye contact and whispered his answers to Officer Malone. Finally, Malone was driving a car registered to a Texas resident who was not in the car, with no indication that he had permission from the owner to do so. Particularly coupled with the fact that Malone did not know where he was going, this could have given Officer Wilson reason to suspect that the car was stolen. After reviewing the totality of the circumstances, we conclude that Officer Wilson had specific, particular, and articulable reasons to extend the detention of Malone beyond the initial traffic stop. Therefore, we affirm the circuit court's denial of Malone's motion to suppress.

Affirmed.

GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. As I said in my dissenting opinion in *Burks v. State*, 362 Ark. 558, 210 S.W.3d 62 (2005), this court should either follow the precedent set forth in *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004) and *Lilley v. State*, 362 Ark 436, 208 S.W.3d 785 (2005), or overturn them.

The majority has once again departed from precedent, this time sending the wrong message to Arkansas law enforcement that reasonable suspicion can be found under virtually any set of circumstances. Here, the initial seizure of Malone's car was justified because the officer had probable cause to issue a warning ticket for a defective tail light; the seizure became unlawful when "it [was] prolonged beyond the time reasonably required to complete that mission." *See Illinois v. Caballes*, 125 S.Ct. 834, 837 (2005). Once the purpose of the traffic stop was over, Officer Wilson had no specific, particularized, and articulable facts on which to base a reasonable suspicion that Malone was committing a felony or serious misdemeanor. *See* Ark. R. Crim P. 3.1. The State failed to prove either.

In the present case, the majority relies on three factors to support the State's contention that Officer Brandon Wilson had reasonable suspicion to further detain Malone after Wilson completed the purpose of his initial stop. First, when Wilson asked where Malone was going, Malone replied that he did not know, and that he was going "somewhere in Arkansas." Second, Wilson said Malone appeared to be shaking uncontrollably, he did not make eye contact, and he answered questions in a very quiet voice. Finally, Officer Wilson testified that the vehicle was registered to a Texas resident who was not in the car.

Each of these factors has a simple and reasonable explanation, and according to our precedent, cannot form the basis for reasonable suspicion. First, in addition to telling Officer Wilson that he did not know where he was going, Malone stated that he was taking his niece, Natasha, to her aunt's house somewhere in Arkansas. Malone, a resident of Texas, explained that he did not know exactly where he was going because he had never been there before. A perfectly reasonable explanation.

Second, Malone was shaking; however, it should be noted that Officer Wilson stopped the car at 2:29 a.m. on a cold, snowy morning, with temperatures in the thirties. And while Malone appeared to be nervous during the stop, we have repeatedly held that mere nervousness, standing alone, cannot constitute reasonable suspicion of criminal activity and grounds for detention. *Lilley, supra; Laime v. State*, 347 Ark. 142, 158, 60 S.W.3d 464, 475 (2001).

Finally, the majority opinion emphasizes that the car was not registered to Malone or either of his passengers. What the majority fails to mention in its opinion is that Officer Wilson was presented

with proof of insurance showing that Anthony Richardson, one of the passengers, was the insured party on the vehicle. To state the obvious, a person who steals a car normally does not insure it in his own name. To suspect otherwise is illogical. Despite the fact that these three factors had simple and reasonable responses, the majority erroneously validated Officer Wilson's search premised on his baseless suspicion that the car was stolen.

Contrary to the majority's conclusions, the precedent set forth in *Lilley* controls the outcome of this case. The majority correctly sets out the facts in *Lilley*, but then fails to recognize its binding precedent. In *Lilley* we held that "it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation." *Lilley, supra* (citing *United States v. Beck*, 140 F.3d 1129, 1137 (8th Cir. 1998)). Here, the evidence shows that Malone gave reasonable responses to Wilson's questions; furthermore, neither Malone nor his two passengers had a criminal record; nor were there any conflicting stories given to the officer. In sum, there was not one indication of any illegal activity when Officer Wilson decided to conduct a canine search. As was the case in *Lilley*, the factors comprising Officer Wilson's alleged reasonable suspicion are indeed "wholly innocent."

The majority opinion is also at odds with this court's holding in *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). In *Sims*, the State argued that Officer Willey had reasonable suspicion to continue to detain defendant Sims for the purposes of conducting a canine sniff, based on the following facts: (1) Sims appeared nervous and was not listening to what Willey was telling him; (2) Officer Willey observed that Sims began to sweat during the course of the stop; (3) Willey thought it strange that Sims told him that he had just been to look at a swing set at Wal-Mart; (4) when asked where he was headed, Sims, who had Illinois license plates, explained that he had just picked up a friend in Mississippi; (5) when asked for identification, Sims's passenger could only produce a birth certificate; and (6) the second officer ran background checks on both Sims and his passenger which revealed that both had prior arrests for drugs.

After consideration of the above facts, the *Sims* court held that Officer Willey had no particular factual basis which would have given rise to an objective and reasonable suspicion of criminal activity. In support of this decision, we noted that there was nothing odd or unusual about Sims's sweating in the middle of

July. Additionally, the court found that Sims's comments regarding the swing set could have been a nervous attempt at conversation. The current decision is plainly at odds with the precedent set forth in *Sims*, as well as *Lilley*. Under the majority's logic, it is normal behavior to sweat in the July heat, but suspicious to shake in the middle of a February snowstorm.

Under the totality of the circumstances, it is clear that Wilson lacked specific, particular, and articulable reasons to extend the detention beyond the purpose of the initial stop; thus, the use of the drug dog to sniff Malone's vehicle violated Ark. R. Crim. P. 3.1. Because the trial court erred in denying Malone's motion to suppress, I dissent.