2011 Ark. App. 217

Dewquan Marquis JOHNS, Appellant

v.

STATE of Arkansas, Appellee.

No. CA CR 10–708.

Court of Appeals of Arkansas.

March 16, 2011.

858

LaTonya Laird Austin, Little Rock, for appellant.

Valerie Glover Fortner, Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Dewquan Johns was convicted of one count of simultaneous possession

of drugs and a firearm and one count of possession of a controlled substance with intent to deliver. On appeal, Johns argues that the evidence against him was insufficient to sustain his convictions and that the circuit court erred in refusing to allow him to introduce the previous sworn testimony of a witness. Because we find merit in Johns's second argument on appeal, we reverse and remand.

■ In his first point on appeal, Johns argues that the circuit court erred in denying his motion for directed verdict. A motion for directed verdict is a challenge to the sufficiency of the evidence. The test for determining sufficiency of the evidence is whether substantial evidence supports the verdict. *Cherry v. State,* 80 Ark. App. 222, 226, 95 S.W.3d 5, 8 (2003); *Hatley v. State,* 68 Ark.App. 209, 213, 5 S.W.3d 86, 88 (1999). Evidence is substantial when it is forceful enough to compel a conclusion and goes beyond mere speculation or conjecture. *Wortham v. State,* 65 Ark.App. 81, 82, 985 S.W.2d 329, 329 (1999). Circumstantial evidence can be sufficient to sustain a conviction when it excludes every other reasonable hypothesis consistent with innocence. *Mace v. State,* 328 Ark. 536, 539, 944 S.W.2d 830, 832 (1997). The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Ross v. State,* 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001).

Johns was charged with possession of a controlled substance with intent to deliver, a violation of Arkansas Code Annotated section 5–64–401(a) (Repl.2005), which makes it "unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." In addition, he was charged with simultaneous possession of drugs and a

firearm in violation of Arkansas Code Annotated section 5–74–106(a)(1) (Repl.2005). That statute provides that "[n]o person shall unlawfully commit a felony violation of § 5–64–401 or unlawfully attempt, solicit, or conspire to commit a felony violation of § 5–64–401 while in possession of . . . [a] firearm."

On June 4, 2009, Trooper Victor Coleman of the Arkansas State Police clocked a Dodge Ram traveling on Interstate 40 at seventy-five miles per hour in a seventy-mile-per-hour zone.[1] Coleman pulled the truck over, and as he approached the passenger side of the vehicle, he could smell marijuana inside the truck. Coleman asked the driver, Johns, to get out of the truck and take a seat on the passenger side of Coleman's patrol vehicle. Coleman inquired about the ownership of the truck, and Johns informed him that it was a rental. Coleman talked to Johns for a few minutes, and Johns explained that he and his passenger were coming from Helena.

Coleman then walked to the passenger, Michael Sturd, and talked to Sturd about smelling marijuana in the truck. Coleman asked Sturd to exit the vehicle and then proceeded to search the truck based on the odor of marijuana. Coleman began searching inside the cab and continued smelling marijuana. Based on his experience, Coleman knew that marijuana was frequently hidden in the spare-tire area, so he went to the rear of the vehicle, crawled under, and located the "air breather" from the engine compartment placed over the top of the spare tire. At that point, Coleman suspected that the drugs were concealed in the engine compartment, so he went to the engine, opened the air filter, and found two bags of marijuana.

---

1. On redirect examination, Trooper Coleman testified that he had received a tip from the Drug Enforcement Agency that there would be narcotics in the vehicle.

Coleman placed Johns and Sturd in custody and returned to search the vehicle further. Coleman found a 9mm handgun strapped to the battery of the car on the other side of the engine compartment. The gun was loaded with a round in the chamber.[2] Coleman then spoke to Sturd again, who said that he had smoked marijuana before he left Marvell or |₄Helena; Coleman patted Sturd down and discovered a small quantity of marijuana in Sturd's shoe. Coleman then arrested both Johns and Sturd for possession of marijuana and simultaneous possession of drugs and a firearm.

At trial, the State called Paul Laubach, an employee of Enterprise Rent–A–Car, who testified that he rented the truck to Johns on May 1, 2009. Wes Sossamon, a latent-print examiner at the Arkansas State Crime Laboratory, testified that he recovered a partial fingerprint from the 9mm pistol but that the print "lacked sufficient characteristics to be able to say who it belonged to." Sossamon was able to recover a partial print from a plastic bag, but the print did not match either Johns or Sturd. Finally, the State called Lize Wilcox, a forensic chemist with the Crime Lab. Wilcox tested and weighed the marijuana and determined that the total weight was twenty-three ounces.

Johns testified that, on June 4, 2009, he was in Helena and had picked up his cousin, Sturd, to drive to Little Rock. They had been on the interstate for about five or ten minutes when Coleman pulled them over. Johns testified that he wondered why he was being pulled over because he was going only seventy-four miles per hour. After Coleman asked him to sit in his patrol vehicle, Johns thought that he would perhaps get a ticket for speeding, so he was upset when Coleman placed him under arrest. Johns claimed that he did not know the drugs or the gun were in the car and that the first time he knew they were there was "when [Coleman] came out and put them on the hood."

|₅Johns denied ever smoking marijuana and hypothesized that Sturd had placed the drugs and gun under the hood of the truck. Johns suggested that, the night before they were arrested, Sturd asked him if he could get some belongings out of the truck. Johns gave Sturd the keys to the truck; Sturd was gone with the keys about five or ten minutes; and the next time Johns saw Sturd was the next day. Johns asserted that neither the drugs nor the gun belonged to him and said that he had nothing to do with how they came to be hidden in the truck.

■■■ On appeal, Johns argues that this evidence failed to prove that he constructively possessed either the marijuana or the firearm. Constructive possession may be imputed when the contraband is found in a place that is either accessible to the defendant and subject to his exclusive dominion and control, or subject to the joint dominion and control by the defendant and another. *Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976); *Boston v. State*, 69 Ark.App. 155, 12 S.W.3d 245 (2000). In order to prove constructive possession, the State must establish beyond a reasonable doubt that 1) the defendant exercised care, control, and management over the contraband, and 2) the accused knew the matter possessed was contraband. *See Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995). In *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994), our supreme court outlined a five-part analysis to determine

2. Although the police ran the serial number of the gun, they were unable to ascertain to whom the gun belonged, instead determining only that it had not been stolen.

if constructive possession had been established:

> It is not necessary for the State to prove literal physical possession of drugs in order to prove possession. *Osborne v. State,* 278 Ark. 45, 643 S.W.2d 251 (1982). Possession of drugs can be proved by constructive possession. *Littlepage v. State,* 314 Ark. 361, 863 S.W.2d 276 (1993). Constructive possession can be implied when the drugs are in the joint control of the accused and another. However, joint occupancy of a vehicle, standing alone, is not sufficient to establish possession or joint possession. There must be some other factor linking the accused to the drugs. *Osborne,* 278 Ark. at 50, 643 S.W.2d at 253. Other factors to be considered in cases involving automobiles occupied by more than one person are: (1) whether the contraband is in plain view; (2) whether the contraband is found with the accused's personal effects; (3) whether it is found on the same side of the car seat as the accused was sitting or in near proximity to it; (4) whether the accused is the owner of the automobile, or exercises dominion and control over it; and (5) whether the accused acted suspiciously before or during the arrest. *Plotts v. State,* 297 Ark. 66, 69, 759 S.W.2d 793, 795 (1988).

*Mings,* 318 Ark. at 207, 884 S.W.2d at 600; *see also Malone v. State,* 364 Ark. 256, 217 S.W.3d 810 (2005).

Thus, in order to prove constructive possession, the State must show more than the fact that Johns occupied a car in which contraband was discovered; there must be some other factor or factors linking Johns to the contraband. In *Mings, supra,* there were three appellants who had all been convicted of possession of cocaine with intent to deliver. Two of the appellants, Mings and Smith, had rented a mobile home, and the third appellant, Grabow, was driving the motor home at the time it was stopped by state troopers. Upon searching the motor home after the stop, state troopers discovered 11.17 pounds of cocaine, valued at approximately four million dollars, hidden under a drawer below a closet inside the motor home. In affirming the appellants' convictions, the supreme court considered a variety of factors that linked the appellants with the contraband: both Mings and Smith signed the rental agreement for the motor home; Grabow, the driver, was "extremely nervous" and "visibly shaking" when the vehicle was stopped; the three were purportedly on a five-day trip to Branson, Missouri, but were only casually acquainted; Grabow and Smith did not have enough clothes for an extended stay; and, while Smith claimed to be unemployed, she had paid cash to rent the motor home. *Mings,* 318 Ark. at 208, 884 S.W.2d at 601. Taken together, the court concluded that there was "sufficient circumstantial evidence for the jury to conclude that all three were in joint control and possession of the cocaine as 'mules,' carrying four million dollars worth of drugs ... to Branson, Missouri." *Id.* at 209, 884 S.W.2d at 601.

In *Malone, supra,* the supreme court found substantial evidence of constructive possession where the appellant, Malone, who was driving the vehicle that was pulled over by police, appeared nervous and was uncertain of his destination when asked by police. In addition, after the police obtained consent to search the vehicle from Malone's passenger, in whose name the vehicle was insured, police noted a "strong odor of marijuana" immediately upon opening the trunk, where they discovered ten pounds of marijuana and two pounds of cocaine in a suitcase. *Malone,* 364 Ark. at 260, 217 S.W.3d at 812. In affirming Malone's conviction, the court

noted that, "as the driver of the car, Malone exercised dominion and control over it and had keys to the trunk" and "the odor of marijuana in the trunk was strong, supporting an inference that anyone who opened the trunk would know that the trunk contained contraband." *Id.* at 262, 217 S.W.3d at 813. The court also pointed to the officer's testimony that Malone was nervous and shaking uncontrollably, even though he had only been pulled over for a minor offense, and that Malone stated he did not know where he was going. *Id.* Viewing the evidence in the light most favorable to the State, the court concluded that there was sufficient evidence of Malone's knowledge of and control over the contraband to support his conviction. *Id.*

In the present case, the State demonstrated that Johns exercised dominion and control over the vehicle, as he was the individual in whose name the truck had been rented. In addition, Johns testified that nobody else drove the truck or had keys to it and that one could not get under the hood of the truck while it was locked. Although Johns also stated that he had no knowledge of the drugs or the gun and surmised that his cousin, Sturd, must have put the contraband in the car when Sturd went to the car the night before, the jury was not required to believe his self-serving testimony. *McKenzie v. State,* 362 Ark. at 267, 208 S.W.3d at 178. Moreover, Trooper Coleman testified that the odor of marijuana was strong enough to smell from outside the vehicle, thus giving rise to an inference that the odor could have been smelled inside the vehicle such that anyone inside the truck would have known that the vehicle contained contraband. *See Malone,* 364 Ark. at 262, 217 S.W.3d at 814; *cf. Boston v. State,* 69 Ark.App. 155, 12 S.W.3d 245 (2000) (noting that, where there was no assertion that any odor of marijuana emanated from a suitcase in the

vehicle's trunk, evidence in support of appellant's conviction was lacking). Based on the evidence introduced at Johns's trial, we conclude that there was sufficient evidence of constructive possession for the jury to reach a guilty verdict.

In his second point on appeal, Johns argues that the trial court erred in denying his motion to have an absent witness—his cousin, Michael Sturd—declared unavailable and thus precluding the introduction of Sturd's testimony from Johns's previous trial. The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse a circuit court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Rodriguez v. State,* 372 Ark. 335, 337, 276 S.W.3d 208, 211 (2008); *Morris v. State,* 358 Ark. 455, 193 S.W.3d 243 (2004). Moreover, we will not reverse absent a showing of prejudice. *Rodriguez,* 372 Ark. at 337, 276 S.W.3d at 211.

As noted, this was the State's second trial of Johns. At his first trial, Sturd testified that the marijuana and gun found in the engine compartment of the truck were his and that Johns did not know anything about them. Sturd explained that he had purchased the marijuana in Helena and put it in his suitcase and, because he was riding back to Little Rock with Johns, Sturd put the marijuana in the air filter so that it would not be in the cab of the truck. Sturd informed the jury that he had previously pled guilty to "his charge." The jury at Johns's first trial was unable to reach a verdict.

At Johns's second trial, the State moved in limine to preclude Johns from introducing evidence of Sturd's conviction pursuant to Arkansas Code Annotated section 5-2-405 (Repl.2006). The State argued that it would be improper to call Sturd to the stand only to have him invoke his Fifth

Amendment right. Johns's attorney replied that Sturd had been subpoenaed, but it was unclear whether Sturd would appear to testify. Defense counsel said [10] that she had transcripts of Sturd's prior testimony and would be asking to have him declared unavailable pursuant to Arkansas Rule of Evidence 804 if he either did not appear or appeared and pled the Fifth. The court reserved its ruling at that time, noting that "right now, we don't even know that he's going to appear."

The trial proceeded, and at the lunch recess, the court inquired whether defense counsel had any documentation to indicate that Sturd was present or had been served with the subpoena. Counsel replied that she had an affidavit of process showing that Sturd had been served. The State asked whether the court was making a ruling at that point on whether Sturd was unavailable, and the court replied that it was not because it still needed to make sure that process was actually served. The court continued:

As far as anything on the charges, I mean, I think that 5–2–405 does indicate that it's not a defense if the other person's been convicted or charged with an offense. But the fact that Mr. Sturd made statements concerning—and I was there—his possession of any of the narcotics or anything like that, if it is proven that he is unavailable, then those will come in, but any kind of conviction is not relevant to this trial.

The case proceeded, and after the State rested and defense counsel's motion for directed verdict was denied, the court again asked if Sturd had appeared and if defense counsel wanted to "make an argument on that." Counsel then offered a copy of the affidavit of service purporting to show that Sturd had been properly served and asked that the hall be sounded to determine whether he was there. Re-

ceiving no response after the bailiff sounded the hall, counsel asked that Sturd be declared unavailable pursuant to Rule 804 and asked that his prior sworn testimony be read into evidence. The State responded that it did not believe [11] that there had been a good-faith effort to procure the witness, noting that the affidavit showed that the subpoena was given to a girlfriend who lived at Sturd's house. In addition, the State said that, even if Sturd were present, Sturd had been advised by his attorney to plead the Fifth Amendment, so under "cases such as *Hamm* [*v. State*, 301 Ark. 154, 782 S.W.2d 577 (1990) ]," the defense should not be allowed to put a witness on the stand knowing that the witness would invoke his Fifth Amendment rights.

Defense counsel responded that she had spoken to Sturd's attorney, who had assured her that he would attempt to contact Sturd to ensure his presence at trial. Defense counsel also argued that there had been a good-faith effort to have Sturd served and that she had "done everything that we could do ... to get him here." The court then asked if defense counsel was familiar with the *Hamm* case, explaining that the holding of that case was that neither the State nor the defense is permitted to call a witness knowing that the witness will claim his testimonial privileges. Defense counsel acknowledged the holding of the case but asserted that she had no way of knowing whether Sturd would invoke his Fifth Amendment privileges if he appeared to testify, pointing out that Sturd had been advised to plead the Fifth in the first trial but testified anyway.

The court returned to the question of *Hamm v. State* in the following colloquy:

THE COURT: But from the arguments I received earlier, it indicated to me that [Sturd] was going to take the Fifth. If you both knew that he was

going to take [the] Fifth, under the case law under *Hamm v. State,* neither of you is permitted to call a witness knowing that the witness will claim the testimonial privilege to boost your case.

DEFENSE COUNSEL: Well, I think— clearly, though, your Honor, what I stated, to be accurate, is that I was told by his attorney that he was going to plead the Fifth.

THE COURT: Okay.

DEFENSE COUNSEL: And I think in all fairness, I can't rely on that because he was advised by previous counsel to plead the Fifth, and he did not take his counsel's advice because we have a statement where he clearly did not plead the Fifth.

. . . .

PROSECUTOR: Your Honor, at this point she's asking for somebody to be subpoenaed to determine whether or not they're going to take the Fifth Amendment, I believe is what she's arguing now.

DEFENSE COUNSEL: No. To see whether or not they're going to testify consistently with what they've already testified to.

PROSECUTOR: What counsel of Mr. Sturd has told her is that he's going to plead the Fifth Amendment. That's her information now.

THE COURT: That they advised him to plead—

PROSECUTOR: Why would you bring in somebody and put them on the stand? I think what she's asking is [to] talk to Michael Sturd. I don't think she's asking to bring him in and testify. Because she wouldn't do that based on these circumstances. Based on the fact that under these—with the information she has now, he will plead the Fifth Amendment, which she can't do.

DEFENSE COUNSEL: The information that I have is that he's been subpoenaed to testify; he was advised to take the Fifth, which is the same thing he was advised the first time the State tried this case.

THE COURT: Okay. And in this case, it states that "both parties had been told that the witness would take the Fifth in response. Such an occurrence would imply to the jury that the witness had in fact sold the drugs." In this other case, "the trial judge ruled that he could not be allowed to flagrantly build the defense out of the use of the testimonial privilege," and that's what we're doing today. So, no.

DEFENSE COUNSEL: And which case are you reading right now, Judge?

THE COURT: *Hamm versus State.* It's the last paragraph.

DEFENSE COUNSEL: I don't have that case so I can't—

THE COURT: I've got it right here. But that's going to be the ruling of the Court. It's good case law . . . .

DEFENSE COUNSEL: Again, your Honor, I have to make my record for appeal purposes. And this case in *Hamm,* the defendant him—or the witness himself or herself said that they would take the Fifth. We have no record anywhere where Michael Sturd himself has said he would take the Fifth. That's the facts of this case. I do not feel that it's applicable in this case.

THE COURT: Okay . . . . Okay. Let's proceed. Ruling stands.

On appeal, Johns assigns error to this ruling. He argues that *Hamm* is both legally and factually distinguishable and that, instead of relying on *Hamm,* the trial court should have determined that Sturd was unavailable to testify pursuant to Ar-

kansas Rule of Evidence 804(a)(5).[3] In *Hamm*, an individual named James Pace informed his parole officer that he was using cocaine, that appellant Hamm was his supplier, and that the only way he could break his habit was to get Hamm off the streets. Police officers thus set Pace up to make a controlled buy of cocaine from Hamm, and once the buy was completed, Hamm was charged with delivery of cocaine. *Hamm*, 301 Ark. at 156, 782 S.W.2d at 578. At his trial, Hamm attempted to call a witness in order to ask if the witness had ever sold drugs to Pace. The trial court refused to allow the witness to testify because the witness had previously told both the prosecuting attorney and defense counsel that he would invoke his Fifth Amendment rights if he was asked if he had sold drugs to Pace. *Id.* at 158, 782 S.W.2d at 580.

On appeal, Hamm argued that the trial court's rulings violated his Sixth Amendment right to confront the witnesses against him. After pointing out that Hamm's argument had not been made below, the supreme court nonetheless went on to reject Hamm's argument, stating that to call this witness

would imply to the jury that the witness had in fact sold drugs to Pace. The trial judge ruled that he would not allow [Hamm] to flagrantly build his defense out of the use of the testimonial privilege.... [N]either the prosecution nor the defense is permitted to call a witness *knowing* that the witness will claim his testimonial privilege.

*Id.* at 158–59, 782 S.W.2d at 580 (emphasis added); *see also Kiefer v. State*, 297 Ark. 464, 469, 762 S.W.2d 800, 802 (1989) (explaining that the "evil in this situation lies not in the mere calling of a witness but in the asking of a series of questions, each of which [the witness] refuses to answer on privilege against self incrimination grounds, thus creating the equivalent of testimony in the minds of the jurors").

Johns correctly argues that *Hamm* is distinguishable from the present case. In *Hamm*, the defendant sought to call a witness with full knowledge that the witness would invoke his Fifth Amendment rights in front of the jury with the intent of creating an inference that the witness had sold drugs to Pace. In the instant case, however, the record was bereft of evidence that Johns's attorney had definite knowledge that, had Sturd appeared, he would actually invoke his Fifth Amendment privilege before the jury. *See Kiefer, supra* (holding that there was no error in denying defendant's motion for mistrial where there was no evidence that the State had knowledge that the witness would assert her Fifth Amendment privilege and nothing in the record showing that she had previously asserted any recognized privileges). Instead, as defense counsel pointed out, Sturd had previously ignored his

---

**3.** As an initial matter, the State contends that Johns's argument is not preserved for appeal because he failed to obtain a specific ruling from the trial court on his Rule 804(a)(5) objection. The State urges that, despite a "long discussion on the motion" to have Sturd declared unavailable, the court "ultimately based its ruling on *Hamm*" and never made a ruling on whether Johns had made a good-faith effort to serve Sturd. Thus, the State contends that this court should not reach the question of whether Sturd should have been declared unavailable under Rule 804.

The State's argument is of no merit. Although Johns attempted to have the trial court rule on his Rule 804 unavailability argument, the court instead based its ruling on *Hamm v. State*. On appeal, Johns argues that the trial court was wrong to apply *Hamm* (and we note that the State makes no persuasive argument that the court's analysis was correct). Because Johns argued below and on appeal that the trial court was wrong to find *Hamm* controlling, we conclude that his arguments on appeal are properly preserved.

attorney's advice to invoke his Fifth Amendment rights and testified at Johns's first trial. In ⌊16⌋the absence of any evidence that Sturd would actually choose to invoke his privilege and had so informed defense counsel, the circuit court erred in relying on *Hamm.*

In addition, as argued below, Johns's intent in calling Sturd was not to have him invoke his testimonial privilege in front of the jury to "creat[e] the equivalent of testimony in the minds of the jurors." *Kiefer,* 297 Ark. at 469, 762 S.W.2d at 802. His purpose was not to "build a defense out of the use of the testimonial privilege." *Hamm,* 301 Ark. at 158, 782 S.W.2d at 580. Instead, Johns wanted to have Sturd declared unavailable so that Johns could introduce Sturd's exculpatory testimony from the first trial of this matter pursuant to Rule 804(a)(5). The trial court's refusal to consider anything other than the inapplicable holding of *Hamm* was error.

■ Moreover, Johns argues that the trial court's error was prejudicial, in that his first trial resulted in a hung jury, which he asserts was likely attributable to Sturd's testimony that the marijuana belonged to him, not to Johns. The State argues that this is nothing more than speculation on Johns's part. We disagree, however, and conclude that the trial court's decision to exclude evidence that another person claimed criminal responsibility more likely than not had some impact on the jury's decision-making. Accordingly, we reverse the trial court's ruling on this issue and remand for further proceedings.

Reversed and remanded.

PITTMAN and ABRAMSON, JJ., agree.